IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

FANXIN ZENG,                                          )
                                                      )
                     Plaintiff,                       )
                                                      )
        v.                                            )
                                                      )   No. _____
                                                      )
TOP APPLICANT, INC. d/b/a ELEVATE,                    )   **COMPLAINT FOR DECLARATORY**
ELEVATE HIRE, and TOP APPLICANT, a                    )   **RELIEF, INJUNCTIVE RELIEF, AND**
corporation; and LEIF TECHNOLOGIES, INC.,             )   **DAMAGES**
a corporation,                                        )
                                                      )
                     Defendants.                      )
                                                      )
                                                      )
                                                      )
                                                      )
                                                      )
_____ )

## I.     INTRODUCTION

1.1.    This matter arises out of an out-of-state for-profit education provider's deceptive advertising, recruiting, and lending practices targeting Washingtonians looking for jobs in technology, as well as unfair and deceptive methods used to enforce and collect upon unenforceable and voidable financing agreements.

1.2.    Defendant Top Applicant, Inc., d/b/a Elevate, Elevate Hire, and Top Applicant (hereinafter, "Elevate") operates an online "bootcamp" that offers to teach students in Washington and across the country how to work as sales development representatives, or "SDRs," in technology companies. Elevate, which has not been licensed by Washington's regulator overseeing private vocational schools, advertises this bootcamp using online "job

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 1

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

postings" on platforms such as LinkedIn. Elevate uses this and other unfair and deceptive acts or practices to recruit and enroll Washingtonians and students across the country in its bootcamp.

1.3.     Most of Elevate's students finance their educations through income share agreements ("ISAs"), which require them to pay a portion of their income to Elevate after they graduate or otherwise depart the bootcamp. Elevate's ISA program was designed and implemented by defendant Leif Technologies, Inc. ("Leif"). Elevate, with Leif's assistance, engages in unfair or deceptive acts and practices in the origination of ISAs issued to borrowers in Washington and across the country. Because Elevate is not licensed by Washington's private vocational school regulator, its ISAs issued to Ms. Zeng and other Washingtonians are unenforceable by law. Moreover, Elevate's ISAs contain a provision that renders them voidable under Washington law at the option of the student borrower.

1.4.     Nevertheless, both Elevate and Leif employ a variety of unfair and deceptive practices in attempts to enforce ISAs against Washington borrowers, including Ms. Zeng. Elevate's and Leif's unfair and deceptive acts or practices include misrepresentations about the validity and enforceability of ISAs, coarse and threatening emails, and threats to take actions that they are not legally permitted to take.

1.5.     Elevate and Leif have also unconscionably, unfairly, and in violation of Washington public policy attempt to limit the ability of borrowers, including Ms. Zeng, to protect themselves. For example, Elevate and Lief have (a) omitted language from their ISAs required by the Federal Trade Commission's "Holder Rule," which preserves claims and defenses against any subsequent purchasers of the ISAs; (b) inserting language that purports to eliminate cancellation and refund policies required under Washington law; and (c) inserting a clause that purports to require borrowers to fully comply and repay with the ISA even if Elevate and Leif breach their own obligations under the ISA.

1.6.     Ms. Zeng therefore brings this action pursuant to RCW 19.86.090, seeking damages, and in her capacity as a "private attorney general" under that statute to seek injunctive

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 2

relief protecting all Washingtonians from the unfair and deceptive acts and practices described herein.

## II.    PARTIES

2.1.    Plaintiff Fanxin ("Amy") Zeng is a natural person and at all relevant times has been a resident of Washington living in King County and/or Pierce County.

2.2.    Defendant Top Applicant, Inc., d/b/a Elevate, Elevate Hire, and Top Applicant (hereinafter, "Elevate") is a corporation organized under the laws of Delaware, with its primary place of business located at 381 East Barbarita Ave., Gilbert, Arizona 85234. Elevate advertises and does business under various trade names, including "Elevate," "Elevate Hire," and "Top Applicant."  For example, Elevate's LinkedIn profile and various LinkedIn postings use the trade name "Elevate," while its website and email address use "elevatehire.co," and ISAs that it entered into with Ms. Zeng (and upon information and belief others), uses "Top Applicant" without including "Inc." Upon information and belief, Elevate has not registered with or sought authorization from the Washington Secretary of State to conduct business in Washington.

2.3.    Defendant Leif Technologies, Inc. ("Leif") is a corporation organized under the laws of Delaware, with its headquarters at 829 Washington St, New York City, New York, 10014. Upon information and belief, Leif has not registered with or sought authorization from the Washington Secretary of State to conduct business in Washington.

## III.    JURISDICTION AND VENUE

3.1.    The Court has personal jurisdiction over Elevate because it advertised to and entered into a contract with Ms. Zeng, a resident of King County, Washington, thereby purposefully availing itself of the benefits and protections of the State of Washington by transacting business with Ms. Zeng and purporting to assume continuing obligations to Ms. Zeng, and demanding continued obligations from Ms. Zeng, in King County. Elevate also purposely directed its activities at Ms. Zeng and others in Washington by placing job postings on LinkedIn with a "Seattle" location and publicly representing that it had placed its graduates

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 3

into roles with companies located in Washington, including Microsoft. The Court also has jurisdiction over Elevate pursuant to RCW 28C.10.150, which provides that "A private vocational school, whether located in this state or outside of this state, that conducts business of any kind, makes any offers, advertises, solicits, or enters into any contracts in this state or with a resident of this state is subject to the jurisdiction of the courts of this state for any cause of action arising from the acts." Finally, the Court has personal jurisdiction over Elevate pursuant to RCW 19.86.160, which provides: "Personal service of any process in an action under this chapter may be made upon any person outside the state if such person has engaged in conduct in violation of this chapter which has had the impact in this state which this chapter reprehends. Such persons shall be deemed to have thereby submitted themselves to the jurisdiction of the courts of this state within the meaning of RCW 4.28.180 and 4.28.185."

3.2.    The Court has personal jurisdiction over Leif because it has purposely directed communications to Ms. Zeng in King County, Washington, seeking to enforce a contract with her, and purposefully availed itself of the benefits and protections of the State of Washington. The Court also has personal jurisdiction over Leif pursuant to RCW 19.86.160, which provides: "Personal service of any process in an action under this chapter may be made upon any person outside the state if such person has engaged in conduct in violation of this chapter which has had the impact in this state which this chapter reprehends. Such persons shall be deemed to have thereby submitted themselves to the jurisdiction of the courts of this state within the meaning of RCW 4.28.180 and 4.28.185."

3.3.    This Court has subject matter jurisdiction over this matter pursuant to RCW 2.08.010.

3.4.    Venue is proper in this Court pursuant to RCW 4.12.025(1) because the Defendants transacted business in King County by advertising to, entering into a contract with, and seeking to enforce that contract against Ms. Zeng.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 4

# IV.    FACTUAL BACKGROUND

4.1.    Elevate operates a 10-week, part-time, online "bootcamp" in which it offers training to consumers in Washington and across the nation to prepare them for entry-level positions as SDRs in technology companies (the "SDR Bootcamp"). SDRs are responsible for outbound prospecting— that is, they research and reach out to potential new clients who might be interested in the products or services sold by the company for which they work.

4.2.    Upon information and belief, the SDR Bootcamp is intended for high school graduates, as a high school diploma (and often an associate's or bachelor's degree) is generally a requisite for hiring in SDR positions. The SDR Bootcamp's "curriculum covers CRM, prospecting, researching target accounts, cold calls, and discovery calls."[1]

4.3.    Elevate's students can pay for the SRD Bootcamp either in cash up front, or by entering into an ISA. According to Elevate's Course Report page, students "may opt to pay the upfront cost of $15,000 for all three tiers of the program. They also have the option to enroll with an Income Share Agreement (ISA) where they pay a certain percentage of earnings after they land a career that pays $60,000 or more."[2]

4.4.    Upon information and belief, Leif assisted Elevate in designing its ISA program, and then implemented it. Leif publicly represents that it "helps schools design custom [ISA] programs, manage payments, access financing, and more."[3] Leif explains that "[t]rying to manage ISAs in-house is difficult,"[4] which would seem particularly true for Elevate, which appears to be literally run from its CEO's house. Leif therefore represents to schools that "[w]e work with you to design your ISA program and always ensure you are kept up-to-date on the latest regulatory guidelines,"[5] and provide "[s]eamless implementation and management of your ISA program using our best-in-class platform."[6] Leif represents that its services allow

---

[1] https://www.coursereport.com/schools/elevate-hire.
[2] https://www.coursereport.com/schools/elevate-hire.
[3] https://leif.org/.
[4] https://leif.org/schools.
[5] Id.
[6] Id.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 5

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

schools to "Drive Greater Enrollment."[7] Upon information and belief Leif provided these services to Elevate, drafted the form used from the ISA issued to Ms. Zeng, actively participated in making Elevate's plans to market ISAs and use them to drive student enrollment, and actively managed Elevate's ISA program.

### A.    Elevate's SDR Bootcamp Is an Unlicensed Private Vocational School.

4.5.    Elevate purports to provide education, in the form of a "program of training, instruction, or study," *see* RCW 28C.10.020(4), to prepare students to obtain employment and work as SDRs in the technology sector. Elevate therefore falls squarely within the definition of "private vocational school," which "means *any* location where an entity is offering postsecondary education in *any form or manner* for the purpose of instructing, training, or preparing persons for *any vocation or profession*." RCW 28C.10.020(7) (emphasis added).

4.6.    Elevate also falls squarely within the statutory licensing requirements of RCW 28C.10, which requires that all out-of-state institutions offering education or educational credentials to Washington residents be licensed by Washington's Workforce Training and Continuing Education Coordinating Board ("WTCECB"). RCW 28C.10.060 provides in relevant part that "*[a]ny entity* desiring to operate a private vocational school *shall apply* for a license to the agency." (Emphasis added.) RCW 28C.10.020(12) defines "to operate" in relevant part as "to establish, keep, or maintain *any facility or location* where, *from, or through which education is offered or educational credentials are offered or granted to residents of this state*." (Emphasis added.)

4.7.    RCW 28C.10.090 provides that "[a] private vocational school, *whether located in this state or outside of this state*, shall not conduct business of any kind, make any offers, advertise or solicit, or enter into any contracts unless the private vocational school is licensed under this chapter." (Emphasis added.) Accordingly, the statutory language requires licensure of all out-of-state institutions offering distance education services to Washingtonians. Moreover, both RCW 28C.10.060 and RCW 28C.10.090 use the term "shall," which is

---

[7] *Id.*

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 6

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

regularly interpreted by Washington courts to be mandatory, and eliminates discretion. None of the limited exemptions from application of RCW 28C.10, found in RCW 28C.10.030, apply to Elevate. Nor do any of the exemptions found in the WTCECB's regulations.

4.8.    Elevate does not appear on the WTCECB's published list of licensed private career schools, which is published at https://www.wtb.wa.gov/private-career-schools/student-resources/licensed-schools/. Upon information and belief, Elevate is not licensed or authorized by the WTCECB to operate in Washington.  Upon information and belief, Elevate did not contact the WTCECB about licensing prior to advertising to and enrolling Ms. Zeng in its SDR Bootcamp.

4.9.    Elevate has operated in Washington without applying for or receiving licensure from the WTCECB, and has violated RCW 28C.10.090 by advertising, making an offer to and entering into a contract with Ms. Zeng and upon information and belief other Washington residents without the requisite licensure.

4.10.    RCW 28C.10.180 specifies certain consequences for Elevate's failure to become licensed with the WTCECB, providing that

> A note, instrument, or other evidence of indebtedness or contract relating to payment for education is not enforceable in the courts of this state by a private vocational school or holder of the instrument unless the private vocational school was licensed under this chapter at the time the note, instrument, or other evidence of indebtedness or contract was entered into.

4.11.    In addition, Elevate's failure to comply with the licensing and other provisions of RCW 28C.10 are *per se* violations of the CPA. *See* RCW 28C.10.210.

**B.    Elevate Engages in Deceptive and Unfair Advertising and Recruiting Practices.**

4.12.    Elevate - without disclosing that it is an unregistered trade name of Top Applicant, Inc. - regularly posts or posted advertisements for its SDR Bootcamp in the form of job postings on LinkedIn, including those with a designated location of "Seattle."

4.13.    An example of Elevate's LinkedIn job postings is attached hereto as Exhibit A, and upon information and belief, Elevate published job postings on LinkedIn in a substantially

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 7

similar form with locations in Washington, including Seattle.  Elevate's job postings represent that accepted applicants "will be funneled into our sales development training to sharpen your skills and graduate into an SDR role with a comp range of $60-$82k for the first year." Exhibit A. This statement, in the context of a job posting, creates the false net impression that the applicant will "graduate into an SDR role" with Elevate – the company that posted the job. The false impression that Elevate hires its graduates is reinforced by Elevate's provision of a "[b]ase pay range," and listing of "[f]eatured benefits" that include medical, vision, and dental insurance, and a 401k. *Id.* Upon information and belief, substantially similar (if not identical) job postings were posted on Linkedin and Craigslist in locations throughout the United States and were specifically designed to state (falsely) that Elevate had job openings near where the prospective applicant resided.

4.14.   Elevate's LinkedIn job postings are public advertisements that create the net impression that Elevate was seeking to hire applicants at the salaries, and with the benefits, posted. Moreover, by advertising a job in "Seattle," Elevate specifically targeted Washington consumers like Ms. Zeng. Elevate's job postings further create the deceptive net impression that Washingtonians can "graduate into an SDR role" at one of the Washington-based companies whose trade names and logos Elevate displays on its website in a list of "Companies That Hire Elevate Members,"[8] such as Microsoft,[9] Outreach,[10] Traject,[11] and Zoominfo.[12]

4.15.   Elevate's job posting advertisements are deceptive under the CPA because they have the capacity to deceive a substantial portion of the public. *See State v. Mandatory Poster Agency, Inc.*, 199 Wash.App. 506, 518-19, 398 P.3d 1271 (2017). For that very reason, Washington statutes and regulations explicitly prohibit private vocational schools from publishing advertisements in the help-wanted sections of newspapers or other publications. *See*

---

[8] *See* https://elevatehire.co/whyelevate.
[9] Microsoft is based in Redmond, Washington.
[10] Outreach is headquartered in Seattle, Washington. *See* https://www.outreach.io/company/contact.
[11] Traject is headquartered in Bellevue, Washington. *See* https://bytraject.com/about/.
[12] Zoominfo is headquartered in Vancouver, Washington and also has offices in Bellevue. *See* https://www.zoominfo.com/b2b/faqs/business.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 8

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

RCW 28C.10.110(2); WAC 490-105-170(3). Regulations in Arizona (where Elevate is headquartered), Ariz. Admin. Code R4-39-304.B.1, California (where Elevate's own LinkedIn page publicly represents that it is headquartered),[13] Cal. Educ. Code §94897(f), and other states also codify this fundamental rule. Washington law also prohibits private vocational schools like Elevate from representing "falsely, directly or by implication, that the school is an employment agency, is making an offer of employment or otherwise is attempting to conceal the fact that what is being represented are course offerings of a school." RCW 28C.10.110(2)(c).

4.16.   Ms. Zeng came across an Elevate LinkedIn job advertisement with a location designated as "Seattle" as part of her broader job search in late March or early April 2021. The job posting was substantially similar to the job posting attached as Exhibit A.

4.17.   Ms. Zeng contacted Elevate by replying to a link in the company's LinkedIn job posting, believing that she would be applying for a job. Had Ms. Zeng not seen the deceptive job posting or known the truth, she would not have submitted an application to Elevate or had any interaction with it, much less eventually enrolled in the SDR Bootcamp. Upon information and belief, other consumers in Washington have also been deceived in a similar manner.

4.18.   On April 2, 2021, Elevate CEO Norman Rodriguez sent an email to Ms. Zeng, offering her a place in the SDR Bootcamp and stating:

> Hi Amy,
>
> On behalf of the team, I am excited to offer you a seat in the April 2021 (A2021) cohort of Elevate. Congratulations! You earned your seat as one of the top 10% of applicants who applied to the Bootcamp.
>
> As next steps, we'll need you to lock in your seat asap by completing an application on Leif, our ISA provider: Leif - Application & Account Setup
>
> • Your placement in the Elevate SDR Bootcamp is tentative until you complete your account and accept our calendar invitation.
>
> Once this assignment is complete we'll review your reply and get back to you

---

[13] Elevate's LinkedIn page represents that its headquarters (and indeed its only listed location) is in San Francisco, California - though it does not provide a street or mailing address there. *See* https://www.linkedin.com/company/elevatehire/co/about/.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 9

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

with the final decision on your enrollment.

Talk soon and good luck!
-Norman

4.19.   This email creates a false impression that Elevate's admissions process is selective, that numerous other potential students were waiting to take the consumer's tentative place, and that completing the enrollment process is therefore urgent. In truth and in fact, admission to the SDR Bootcamp does not require a placement test, and there is "[n]o previous experience required to apply."[14] Instead, "Elevate Hire is perfect for complete beginners or individuals having a hard time breaking into sales due to lack of experience," and "[t]here are no technical requirements to get into Elevate Hire."[15] "You don't need experience or a degree to be accepted" into the SDR Bootcamp.[16]

4.20.   The link in Mr. Rodriguez's email above is not for an enrollment agreement as one would expect to "lock in your seat," but an application for an ISA through Leif. This email further deceptively characterizes application for an ISA through Leif as an "assignment" that is part of the admission and/or enrollment process.

4.21.   Upon information and belief, the above-quoted email is Elevate's standard communication to potential students who have been "accepted" into the SDR Bootcamp.

4.22.   Upon information and belief, each of Mr. Rodriguez's actions alleged herein were undertaking in the course and scope of his employment with Elevate.

4.23.   Acting on Mr. Rodriguez's email, Ms. Zeng completed Leif's ISA application and signed an ISA the same day. The ISA contains a mis-spelling of Ms. Zeng's first name, and the "Company" is listed as "Top Applicant."

4.24.   Upon information and belief, other students who applied to and/or enrolled in the SDR Bootcamp were required to sign similar or identical ISAs.

4.25.   Upon information and belief, the Elevate SDR has not been operating in

---

[14] https://www.coursereport.com/schools/elevate-hire.
[15] *Id.*
[16] https://careerkarma.com/schools/elevate-sdr-bootcamp/.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 10

Washington for at least two years, and the Zeng ISA financially benefits one or more persons or entities that have an ownership interest in Elevate.  However, Mr. Rodriguez's April 2, 2021 email induced Ms. Zeng to obtain a specific student loan product – i.e., the Zeng ISA – before any showing could be made that she had "exhausted all federal aid options and has been denied noninstitutional private commercial loan products."

4.26.   Moreover, by making ISAs and its associated employment and income guarantees central to its advertising and recruitment, as well as including an ISA application as an "assignment" in the admissions process, Elevate unlawfully used "the availability of financial aid as an inducement to recruitment or enrollment." WAC 490-105-170(2)(f).

4.27.   While Ms. Zeng "locked in" her place in Elevate's SDR Bootcamp by applying for and signing an ISA, she does not remember being presented with or signing, and cannot locate, an enrollment agreement.  Accordingly, upon information and belief Ms. Zeng was not presented with, and did not sign, an enrollment agreement. Thus, to the extent Ms. Zeng was ever enrolled in Elevate's SDR Bootcamp, it appears that the Zeng ISA operated as the enrollment agreement. *See* WAC 490-105-043 ("An enrollment agreement is any agreement that creates a binding obligation to purchase a course of instruction from a school."). Use of the Zeng ISA as an enrollment agreement is unlawful under Washington law governing private vocational institutions. *See* RCW 28C.10.110(2)(b) (providing that it is an unfair business practice to "[u]se an enrollment contract form, catalog, brochure, or similar written material affecting the terms and conditions of student enrollment other than that previously submitted to the agency and authorized for use"). Moreover, upon information and belief Elevate did not submit any enrollment contract form or similar document for authorization from the WTCECB, and the use of any unauthorized enrollment form contract would be unlawful.  Accordingly, Ms. Zeng was never lawfully enrolled in the SDR Bootcamp.

4.28.   Ms. Zeng applied to Elevate (thinking it was a job opportunity) as part of her job search. That search was quickly successful, entirely separate from her interactions with Elevate. On April 1, 2021, the day before she signed her ISA with Elevate, Ms. Zeng received an email

from the company that is now her employer following up on her prior application and seeking to schedule an interview. On April 12, that company offered Ms. Zeng a job, which Ms. Zeng accepted on April 13. Ms. Zeng obtained her current employment using her own efforts, without any assistance from Elevate or its employees, and prior to participation in Elevate's SDR Bootcamp.

4.29.   Mr. Rodriguez sent his "welcome" email to Ms. Zeng and other members of her class on April 12, 2021, the same day she received her job offer. Mr. Rodriguez emailed out the group's first assignment on April 13, 2021, the same day that Ms. Zeng accepted a job with her current employer. It is therefore clear that Ms. Zeng's employment is not the result of any training by or affiliation with Elevate, and was secured before she received any instruction or career assistance from Elevate.

4.30.   Having independently secured employment before starting classes at Elevate, Ms. Zeng informed Mr. Rodriguez that she no longer wished to enroll or participate in the SDR Bootcamp. However, Mr. Rodriguez persuaded her not to withdraw from the course, stating that she could still attend and benefit from the SDR Bootcamp even though she had already secured employment. Ms. Zeng relied upon Mr. Rodriguez's advice, and briefly participated in the SDR Bootcamp. However, Ms. Zeng quickly found that the SDR Bootcamp did not provide her with worthwhile instruction, particularly in light of her prior work experience, the fact that she had already secured employment, and was continuing to develop her skills on the job. She therefore quickly withdrew from the SDR Bootcamp.

4.31.   Mr. Rodriguez's apparent motivation in cajoling Ms. Zeng to stay "enrolled" despite the fact that she had previously and independently secured employment lies in one of several unconscionable provisions of the Zeng ISA, which states: "In the event of your withdrawal or other separation from the Program or Training provided pursuant to this Agreement, you *may* be entitled to a pro rata reduction in your Income Share or the length of the Payment Term, *at the sole discretion of Company*." (Emphasis added.) It appears that according to Elevate, as long as it tricked Ms. Zeng into participating in the SDR Bootcamp,

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 12

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE:  206.682.1644

however briefly and despite her pre-existing and independently secured employment, Elevate was entitled to collect 10% of her gross income each month for three years at its "sole discretion." As discussed further below, Elevate and its agent(s) have sought to enforce the Zeng ISA.

4.32.   Mr. Rodriguez's representations advising and encouraging Ms. Zeng to participate in the SDR Bootcamp despite having independently secured employment before classes started, thereby purporting to trap her in an unconscionable agreement, were unfair and deceptive. Moreover, Elevate has sought to enforce its ISA against at least one other student who independently secured employment and withdrew early in Elevate's SDR Bootcamp. Upon information and belief, this is Elevate's standard operating procedure and has or had the capacity to harm other persons.

## C.   Elevate and Leif Engage in Deceptive and Unfair Practices in Advertising and Originating ISAs.

### 1.   The ISA Falsely and Deceptively states that it is an enforceable contract.

4.33.   RCW 28C.10.180 provides that "A note, instrument, or other evidence of indebtedness or contract relating to payment for education is not enforceable in the courts of this state by a private vocational school or holder of the instrument unless the private vocational school was licensed under this chapter at the time the note, instrument, or other evidence of indebtedness or contract was entered into."

4.34.   As detailed above, Elevate was not licensed under RCW 28C.10 at the time the Zeng ISA was entered into. However, the Zeng ISA falsely and deceptively states it is an enforceable contract relating to the payment for education. For example, the first page of the Zeng ISA states that "THIS IS A LEGAL CONTRACT" and refers to "THE AMOUNT YOU MUST PAY UNDER THIS AGREEMENT."  The Zeng ISA further states that "[e]xcept as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives," and requires a borrower

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 13

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

"verification" that "BY ENTERING INTO THIS AGREEMENT, I AM IRREVOCABLY AGREEING TO SHARE A FIXED PORTION OF MY FUTURE EARNED INCOME … IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THIS AGREEMENT." The Zeng ISA therefore includes false and deceptive statements creating the net impression that it is, in fact, an enforceable agreement.

### 2.    Elevate Misrepresents the Terms of the ISA.

4.35.    Elevate's LinkedIn page states that "we don't get paid a dime until you land a role making over $60,000".[17] Similarly, Elevate's website states that students who chose to finance their programs with an ISA rather than paying up front "only being [*sic.*] to pay dues *after* they land a $60,000 job."[18] These representations create a deceptive net impression that the student will only be responsible for making payments under their ISA when they are making $60,000 per year – an amount that averages out to $5,000 per month.

4.36.    Instead, the Zeng ISA calls for payments once the student's earned income reaches $3,333.33 per month, "which is approximately equal to $40,000.00 annually." The Zeng ISA's payment term is 36 months or until all payments total $17,000 (the payment cap), whichever occurs first.  Upon information and belief, the ISAs issued to Elevate's other students also require payments once the student's earned income reaches $3,333.33 per month.

4.37.    Elevate therefore appears to be engaged in a bait-and-switch by advertising financing under which the borrower need not pay until they are making $60,000 per year, but then requiring an ISA with monthly payments that are triggered when the borrower is making the monthly equivalent of $40,000 (not $60,000) per year. "It is a violation of the CPA to misrepresent the terms of a transaction or to fail to disclose material terms." *State v. Kaiser*, 161 Wn. App. 705, 722, 254 P.3d 850, 859 (2011).

### 3.    The Zeng ISA is voidable, and Ms. Zeng has exercised her right to void it.

4.38.    The Zeng ISA contains a choice of law provision that states that that "[t]he

---

[17] https://www.linkedin.com/company/elevatehire-co/about/.
[18] *See* https://elevatehire.co/financing.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 14

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

1   validity, interpretation, construction and performance of this Agreement, ... and the rights and

2   obligations of the Parties under this Agreement shall be governed by, construed, and interpreted

3   in accordance with the laws of the State of New York, without giving effect to principles of

4   conflicts of law."

5       4.39.   To the extent Elevate contends that RCW 28C.10.180 does not apply and the

6   Zeng ISA is enforceable, RCW 28C.10.170 provides that "[i]f a contract or evidence of

7   indebtedness contains any of the following agreements, the contract is voidable at the option of

8   the student or prospective student: (1) That the law of another state shall apply…."

9       4.40.   Because the Zeng ISA includes a choice of law provision stating that the law of

10   another state – namely, New York – shall apply, it is voidable pursuant to RCW 28C.10.170(1).

11       4.41.   By letter of December 15, 2021, Ms. Zeng validly and lawfully exercised her

12   option to void the Zeng ISA.

13       4.42.   Accordingly, even if the Zeng ISA was ever enforceable (which it was not), as

14   of December 15, 2021 it became void and unenforceable in its entirely.

15       **4.**    **Elevate the Fails to Include Legally Required Holder Rule Language in its**

16           **ISAs.**

17       4.43.   The Federal Trade Commission's ("FTC") Rule on the Preservation of Claims

18   and Defenses, known colloquially as the "Holder Rule," requires creditors who finance

19   consumers' purchases of their goods and services to include in the financial contract language

20   stating: "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO

21   ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE

22   SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE

23   PROCEEDS HEREOF…." 16 C.F.R. § 433.2(a) (emphasis in original).

24       4.44.   The Zeng ISA is a "financed sale" and a "credit sale" as those terms are defined

25   and used in the Holder Rule, and the Holder Rule therefore required inclusion of the above-

26   quoted language in the Zeng ISA. Upon information and belief, ISAs issued by Elevate (with

27   the support, approval, and assistance of Leif) to other Washingtonians to finance participation

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 15

in the SDR Bootcamp are also "financed sales" and "credit sales" as those terms are defined and used in the Holder Rule.

4.45.   The Zeng ISA does not include the required Holder Rule language. Upon information and belief, ISAs issued by Elevate (with the support, approval, and assistance of Leif) to other Washingtonians do not include the required Holder Rule language.

4.46.   Failure to include the required Holder Rule language in the Zeng ISA is an unfair act or practice under the CPA because it is "immoral, unethical, oppressive, or unscrupulous," *Rush v. Blackburn*, 190 Wn. App. 945, 962–63, 361 P.3d 217 (2015), and because it is been declared an unfair practice by the FTC, whose decisions the Legislature has instructed Washington courts to examine when interpreting the CPA. *See* RCW 19.86.920.

4.47.   Elevate's failure or refusal to include the required Holder Rule language in the Zeng ISA and ISAs issued to other borrowers in Washington and across the country is particularly alarming in light of Mr. Rodriguez's threat to sell borrowers ISAs to a "hedge fund that specializes in distressed assets," which threatens to strip borrowers of their ability to protect themselves from debt collectors.

**D.   Elevate's and Leif's ISAs Are Unconscionable and Contain Terms that Are Unconscionable and Violate Washington Public Policy.**

4.48.   Section 7 of the Zeng ISA is found on page five and is innocuously designated "ADDITIONAL PROVISIONS AFFECTING PAYMENTS." Subsection d provides:

> In the event of your withdrawal or other separation from the Program or Training provided pursuant to this Agreement, you may be entitled to a pro rata reduction in your Income Share or the length of the Payment Term, at the sole discretion of Company. You agree to give Company and Leif prompt notice of your withdrawal from the Program or Training and the effective date of your withdrawal.

4.49.   In Washington, RCW 28C.10.050(2)(b) provides that the minimum standards for private vocational school operations include compliance with "a uniform statewide cancellation and refund policy as specified by the" WTCECB. WAC 490-105-130 implements this statute by setting forth the minimum refund and cancellation policies. These statutes and

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 16

1  regulations reflect the well-established principle that when a student withdraws from a school

2  before receiving the benefit of the course of study, it is unfair and unconscionable to require the

3  student to pay for the entire course.

4      4.50.   Section 13 of the Zeng ISA is found on pages seven and either, is designated

5  "RETAINED RIGHTS," and states:

> No breach or the termination of this Agreement will affect the validity of any of
> your accrued obligations owing to Company under this Agreement.
> Notwithstanding termination of the Payment Term, Company shall retain all rights
> to enforce your obligations under this Agreement, including the right to receive the
> full amount of your Income Share owing hereunder based on your Earned Income
> during the Payment Term.

10      4.51.   This "RETAINED RIGHTS" provision renders the Zeng ISA so one-sided and

11  unfair as to be entirely unconscionable because it purports to require Ms. Zeng to pay on the

12  ISA even if Elevate or Leif breach or terminate it.   This is particularly troubling because the

13  consideration recited for the Zeng ISA is that Elevate would provide her with training.   For

14  example, the first page of the Zeng ISA specifically states that Ms. Zeng's obligation is "[i]n

15  consideration of the program or training provided to you" and defines "program or training" to

16  mean "a program or service that provides you the opportunity to earn Qualified Monthly

17  Income," and "refers to [the] SDR Bootcamp." The Zeng ISA further states on page two:

> Company agrees to provide you with the Program or Training, subject to the terms
> and conditions of this Agreement. In return, you agree to pay Company: (a) a total
> of 36.0 Monthly Payments on your Qualified Monthly Earned Income, subject to
> reconciliation and your obligation to make additional payment(s) for any
> underreported Earned Income, as described herein; or (b) until your total Monthly
> Payments reach the Payment Cap, whichever occurs first ("Payment Satisfaction").

22      4.52.   The unfairness and unconscionability of the "RETAINED RIGHTS" and other

23  provisions of the Zeng ISA are particularly acute in this matter. As explained above, Ms. Zeng

24  secured employment on her own, prior to taking Elevate's classes or receiving its training. Thus,

25  Elevate did not provide her with "a program or service that provides [her] the opportunity to

26  earn Qualified Monthly Income" because she was already both qualified and already hired for

27  her position before receiving any training from Elevate, and withdrew from the SDR Bootcamp

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 17

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

as soon as it became apparent that Elevate was not providing her with useful education. Requiring Ms. Zeng to make payments pursuant to or comply with any other requirement of the Zeng ISA

4.53.    The Zeng ISA is further marked by procedural unconscionability.  For example, while the "Withdrawal" and "Retained Rights" provisions purport to strip consumers of rights under Washington statutes, the Holder Rule, and fundamental principles of contract law, they are buried deep within the ISA, and not called to the borrower's attention in any meaningful way. The procedural unconscionability of these and other provisions of the ISA are further accentuated by (a) Elevate's failure to follow the enrollment process and documentation required by the WTCECB; (b) Elevate's inducement of Ms. Zeng to obtain the Zeng ISA (that financially benefits a person or entity with an ownership interest in Elevate) without first showing that Ms. Zeng had been "denied noninstitutional private commercial loan products" as required by RCW 28C.050(3); (c) the deceptive nature of Mr. Rodriguez's April 2, 2021 email creating a false impression of selectivity in the admission process and a false sense of urgency to apply for the ISA and characterizing it as an "assignment"; (d) the lack of disclosures required by federal and/or state law for the ISA as a credit product; and (e) the misrepresentations contained within the Zeng ISA itself about its enforceability. Indeed, in one email seeking to enforce the Zeng ISA Mr. Rodriguez stated his belief that "you probably haven't read it…."

**E.      Elevate and Leif Engage in Unfair and Deceptive Practices in Seeking to Enforce the Unenforceable Zeng ISA.**

4.54.    Elevate executives Norman Rodriguez (CEO) and Asher Alter (Co-Founder and COO) personally communicate with borrowers to enforce ISAs, including without limitation the Zeng ISA.

4.55.    For example, on July 11, 2021 Elevate Co-Founder and Chief Operating Officer Asher Alter sent an email to Ms. Zeng stating in relevant part that "you are nearing 90 days since your first payment was due" and that Leif "will soon label your ISA as delinquent which will cause them to send the loan to their collections department. Leif has you as a signatory to

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 18

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

a legally binding contract, meaning they will pursue the legal avenues at their disposal." This email is deceptive in at least two ways:

    a.  First, it falsely states that Ms. Zeng had payments "due" under the unenforceable ISA, and that Elevate and/or Leif has the right and/or legal ability to enforce Ms. Zeng's ISA.

    b.  Second, Mr. Alter represents that the Zeng ISA as a "loan," which directly contradicts the Zeng ISA itself, which states that "THIS AGREEMENT DOES NOT CONSTITUTE A LOAN." (Emphasis in original.) Accordingly, Elevate misrepresents whether the Zeng ISA is a "loan" in either the ISA contract document itself or in its attempts to collect on it. Either way, the company's practice is unfair and deceptive.

4.56.    Upon information and belief, Mr. Alter's email to Ms. Zeng is a regular part of Elevate's business and has been sent in the same or similar form to other former Elevate students, including those in Washington. This practice has the capacity for repetition, as well as the capacity to harm other consumers.

4.57.    Upon information and belief, each of Mr. Alter's actions alleged herein were undertaken in the course and scope of his employment for Elevate.

4.58.    Mr. Rodriguez also personally communicates with borrowers seeking to enforce their ISAs. For example, on September 19, 2021 Mr. Rodriguez sent an email to Ms. Zeng stating:

> Amy,
>
> I understand that you would prefer to simply disappear on us now that you're comfortable in a role. Sadly, you really can't ghost your way out of a financial contract, this isn't a tinder date you are one and done with.
>
> There are two ways this can go from here.
>
> 1) You man up, swallow your pride and embarrassment and contact us to ensure you are in compliance with your Leif contract and make clear you intend to pay the ISA as agreed upon.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 19

2) You don't step up to the plate and hope this inconvenience just disappears. In that case, we will sell the right to your ISA to a hedge fund that specializes in distressed assets. They will sit on it and do nothing for a while because they know that you probably haven't read it and don't realize that if you remain maliciously out of compliance for a period of time, you then simply owe 100% upfront instead of 10% of your income for X months. Then they will come after you and your employer, as well as wreck your credit score for at least a decade and a half... Trying to skip town will put you in the penalty box for a long time, and you won't be able to get a mortgage, credit card or anything that requires financial trust. This will follow you, your SSN is attached to your ISA.

I get that this is extremely awkward and probably frustrating. A guy like you doesn't like to feel like a fool. But I'd strongly advise not backing yourself into a corner as you currently are. You are making choices that will have consequences.

You have till Wednesday to connect with us or we go down the road of option #2, and then you are someone else's problem. We get paid either way.

Best,
Norman

4.59.    Mr. Rodriguez's statements that signing an ISA with Elevate may or should cause Ms. Zeng to feel "embarrassment" and "like a fool" is an explicit acknowledgement that Elevate did not provide value to Ms. Zeng in exchange for the Zeng ISA.

4.60.    Mr. Rodriguez's statement that Ms. Zeng "probably hasn't read" the ISA is also deeply disturbing, and suggests that Elevate's business model relies upon signing up its students for multi-year financial contracts that the students have not read and do not understand.

4.61.    Mr. Rodriguez's collection email also is unfair and deceptive in numerous ways, including without limitation:

a.    Mr. Rodriguez falsely states and implies that the ISA is a valid and enforceable contract pursuant to which Elevate, through its servicer Leif, is entitled to collect payments. In truth and in fact, the Zeng ISA is and has always been unenforceable pursuant to RCW 28C.10.180.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 20

b. Mr. Rodriguez falsely states that Elevate's assignee can and will "come after" Ms. Zeng's "employer." In truth and in fact, nothing in the ISA even purports to make the borrower's employer liable for monthly payments or other obligations. To the extent that this email states that a debt collector will "come after" Ms. Zeng's employer to do anything other than obtain her address and telephone number, or do anything to harm her professional reputation, such action would violate the federal Fair Debt Collection Practices Act and the Washington Collection Agency Act. *See* 15 U.S. Code § 1692c(b); 15 U.S. Code § 1692b(2) (prohibiting debt collector from stating that the consumer owes any debt); RCW 19.16.250 ("No licensee or employee of a licensee shall: … (10) Communicate or threaten to communicate, the existence of a claim to a person other than one who might be reasonably expected to be liable on the claim in any manner other than through proper legal action, process, or proceedings except" in certain circumstances inapplicable here.). Elevate's threats of unlawful action are deceptive - because they cannot be followed through upon legally - and unfair.

4.62.   Upon information and belief, Mr. Rodriguez's email to Ms. Zeng is a regular part of Elevate's business and has been sent to other former Elevate students, including those in Washington. For example, Mr. Rodriguez's mis-gendering of Ms. Zeng as "a guy like you" indicates that this is standardized text that he cuts and pastes into communications with a range of borrowers, at least sometimes taking little care to personalize it.  This practice has the capacity for repetition, as well as the capacity to harm other consumers.

4.63.   In addition to direct communications and threats from Elevate's officers, Elevate seeks to enforce the Zeng ISA through its servicer, Leif.

4.64.   Leif's communications to Ms. Zeng include threats to send the unenforceable Zeng ISA to "collections." These communications state or imply that the Zeng ISA is an enforceable contract pursuant to which Leif may take "collection" action or enforce any other purported obligation.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 21

4.65.    Upon information and belief, Leif's communications sent to Ms. Zeng are a regular part of Leif's business in servicing ISAs issued by Elevate, and similar communications (or other communications asserting that ISA obligations are enforceable) have been sent to other former Elevate students in Washington. This practice has the capacity for repetition, as well as the capacity to harm other consumers.

4.66.    Ms. Zeng has performed, or is excused from performing, all conditions precedent – to the extent such conditions precedent were ever enforceable – prior to bringing this lawsuit.

## V.    CAUSES OF ACTION

### A.    Declaratory Relief

### (Against All Defendants)

5.1.    Ms. Zeng realleges and incorporates by reference the preceding paragraphs of this complaint as if fully set forth herein.

5.2.    RCW 28C.10.180 provides that a "note, instrument, or other evidence of indebtedness or contract relating to payment for education is not enforceable ... unless the private vocational school was licensed under this chapter at the time the note, instrument, or other evidence of indebtedness or contract was entered into."

5.3.    The Zeng ISA is a "note, instrument, or other evidence of indebtedness or contract relating to payment for education."

5.4.    The Elevate SDR Bootcamp is a "private vocational school."

5.5.    The Elevate SDR Bootcamp was not licensed pursuant to RCW 28C.10 when the Zeng ISA was entered into. Accordingly, the Zeng ISA is unenforceable.

5.6.    Elevate, by and through its CEO Mr. Rodriguez, its COO Mr. Alter, and its agent Leif, has sought to enforce the Zeng ISA.

5.7.    Thus, an actual and justiciable controversy exists as between Ms. Zeng and Defendants concerning the enforceability of the Zeng ISA.

5.8.    Accordingly, pursuant to RCW 7.24.010 *et seq.*, Ms. Zeng seeks the Court's

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 22

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

declaration of the parties' rights under the Zeng ISA, and respectfully requests that the Court issue a declaration that the Zeng ISA is, and has always been, unenforceable.

## B.     Declaratory Relief

### (Against Defendants)

5.9.     Ms. Zeng realleges and incorporates by reference the preceding paragraphs of this complaint as if fully set forth herein.

5.10.   RCW 28C.10.170 provides:

> If a student or prospective student is a resident of this state at the time any contract relating to payment for education or any note, instrument, or other evidence of indebtedness relating thereto is entered into, RCW 28C.10.180 shall govern the rights of the parties to the contract or evidence of indebtedness. If a contract or evidence of indebtedness contains any of the following agreements, the contract is voidable at the option of the student or prospective student:
>
> (1) That the law of another state shall apply….

5.11.   The Zeng ISA states that that "[t]he validity, interpretation, construction and performance of this Agreement, ... and the rights and obligations of the Parties under this Agreement shall be governed by, construed, and interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law."

5.12.   Because the Zeng ISA provides that New York law applies, it is voidable pursuant to RCW 28C.10.170(1).

5.13.   Ms. Zeng has validly exercised her option to void the Zeng ISA.

5.14.   Upon information and belief, Defendants maintain that the Zeng ISA remains valid and enforceable.

5.15.   Thus, an actual and justiciable controversy exists as between Ms. Zeng and Defendants concerning whether the Zeng ISA is void.

5.16.   Accordingly, pursuant to RCW 7.24.010 *et seq.*, Ms. Zeng seeks the Court's declaration of the parties' rights under the Zeng ISA, and respectfully requests that the Court

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 23

issue a declaration that the Zeng ISA is voidable pursuant to RCW 28C.10.170(1), that she has exercised her option to void the ISA, and that the ISA is therefore void as of December 15, 2021.

### C.     *Per Se* Violations of the Consumer Protection Act

### (Against Elevate)

5.17.   Ms. Zeng realleges and incorporates by reference the preceding paragraphs of this complaint as if fully set forth herein.

5.18.   Washington's Consumer Protection Act ("CPA") provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

5.19.   Washington regulates private vocational schools like Elevate by statute, RCW 28C.10 and through regulations promulgated by the WTCECB. *See* WAC 490-105.

5.20.   RCW 28C.10.210 provides that "[a] violation of this chapter or the rules adopted under this chapter affects the public interest and is an unfair or deceptive act or practice in violation of RCW 19.86.020 of the consumer protection act."

5.21.   As set forth above, Elevate has engaged in the following violations of RCW 28C.10, each of which constitutes a *per se* violation of the CPA:

  a.     Violating the Washington Legislature's directive that "[a] private vocational school, whether located in this state or outside of this state, shall not conduct business of any kind, make any offers, advertise or solicit, or enter into any contracts unless the private vocational school is licensed under this chapter." RCW 28C.10.090.

  b.     Failing to "[u]se an enrollment contract form, catalog, brochure, or similar written material affecting the terms and conditions of student enrollment other than that previously submitted to the agency and authorized for use," RCW 28C.10.110(2)(b), and which does not comply with the minimum standards established in WAC 490-105-043.

  c.     Failing to ensure that any enrollment contract includes an attachment

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 24

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

approved by the WTCECB including a stipulation that Elevate discussed with Ms. Zeng obligations in signing any enrollment agreement and incurring any debt for education purposes, and providing "that the enrollment contract shall not be binding for at least five days, excluding Sundays and holidays, following signature of the enrollment contract by both parties." RCW 28C.10.050(2)(i).

      d.    Representing "falsely, directly or by implication, that the school is an employment agency, is making an offer of employment or otherwise is attempting to conceal the fact that what is being represented are course offerings of a school." RCW 28C.10.110(2)(c).

      e.    Representing "falsely, directly or by implication, in advertising or in any other manner, the school's size, location, facilities, equipment, faculty qualifications, number of faculty, or the extent or nature of any approval received from an accrediting association." RCW 28C.10.110(2)(f).

      f.    Making or causing "to be made any statement or representation in connection with the offering of education if the school or agent knows or reasonably should have known the statement or representation to be false, substantially inaccurate, or misleading." RCW 28C.10.110(2)(j).

      g.    Engaging "in methods of advertising, sales, collection, credit, or other business practices which are false, deceptive, misleading, or unfair, as determined by the agency by rule." RCW 28C.10.110(2)(k). Elevate's violation of the agency's rules include, but are not limited to, the following:

          i.    Using "the availability of financial aid as an inducement to recruitment or enrollment." WAC 490-105-170(2)(f).

         ii.    "[A]dvertising educational programs under the "help wanted" section of publications." WAC 490-105-170(3).

       iii.    "[A]dvertising and making offers of training without including the full name under which the school is licensed by the agency." WAC 490-105-

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 25

170(5).

      h.     Violating "RCW 28C.10.050(3) regarding the sale of, or inducing of students to obtain, specific consumer student loan products."  RCW 28C.10.110(2)(m).

      i.     Failing to follow the applicable minimum refund and cancellation policies. WAC 490-105.130.

5.22.   Elevate's violations of RCW 28C.10 are acts "in trade or commerce" because those acts constitute "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." *See* RCW 19.86.010(2).

5.23.   Elevate's violations of RCW 28C.10 affect the public interest pursuant to the Legislature's declaration in RCW 28C.10.210, and because they had or have the capacity to injure other persons. *See* RCW 19.86.093. For example, Elevate's unlawful practices relating to the SDR Bootcamp had or have the capacity to injure others because they appear to be its standard business practice and part of a pattern, because it publicly advertised job postings for positions in Seattle, and its website displays the names and logos of Washington-based tech companies on a list of "Companies That Hire Elevate Members,"[19] such as Microsoft, Outreach, Traject, and Zoominfo. Moreover, Elevate's website refers to "hundreds of Elevate members and alumni,"[20] and its LinkedIn page confirms that it continued to enroll new "cohorts" after Ms. Zeng's experience.[21]

5.24.   Plaintiff suffered injury to her business or property as a result of Elevate's unfair and deceptive acts or practices in an amount to be proven at trial, but which includes, without limitation, fees to consult with an attorney to dispel uncertainty regarding the nature of her alleged obligations under the Zeng ISA, as well as the value of time diverted from her employment, in response to Elevate's actions. *See Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 62, 204 P.3d 885 (2009) (injury element of CPA met by "expenses incurred in dispelling her uncertainty about the legal ramifications of the subrogation claim, including out-

---

[19] *See* https://elevatehire.co/whyelevate.
[20] *See* https://elevatehire.co/whyelevate.
[21] *See* https://www.linkedin.com/company/elevatehire-co/posts/?feedView=all.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 26

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

of-pocket expenses for postage, parking, and consulting an attorney").

**D.**   **Non-*Per Se* Violations of the Consumer Protection Act**

**(Against Elevate)**

5.25.   Ms. Zeng realleges and incorporates by reference the preceding paragraphs of this complaint as if fully set forth herein.

5.26.   Elevate engaged in the following unfair and deceptive acts or practices, in violation of RCW 19.86.020:

   a.   Advertising the SDR Bootcamp in a job posting on LinkedIn.

   b.   Failing to disclose the material fact that Elevate was not licensed to operate a private vocational school in Washington.

   c.   Creating the deceptive net impression that the SDR Bootcamp was selective in its admissions process, that time was of the essence to enroll, that the completing the Leif ISA application was an "assignment."

   d.   Representing in the Zeng ISA itself and in subsequent communications (including communications seeking to enforce or collect upon it) that the Zeng ISA was an enforceable contract, when in truth and in fact the Zeng ISA is and always has been unenforceable.

   e.   Encouraging Ms. Zeng to participate in the SDR Bootcamp despite the fact that she had independently secured employment as an SDR prior to beginning classes.

   f.   Misrepresenting the terms and conditions of the Zeng ISA.

   g.   Soliciting and entering into an unconscionable contract – i.e., the Zeng ISA.

   h.   Threatening to take actions to enforce or sell the Zeng ISA that Elevate and/or its assigns could not lawfully take.

   i.   Omitting language from the Zeng ISA required by the FTC's Holder Rule.[22]

5.27.   These acts or practices are within trade or commerce because they relate to the

---

[22] For the avoidance of doubt, Ms. Zeng is not asserted a claim or seeking relief under the Holder Rule itself.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 27

advertising and sale of educational services, and the attempted enforcement of a contract arising out of that advertising and sale. *See, e.g.*, *Consumer Financial Protection Bureau v. CashCall, Inc.*, No. CV157522JFWRAOX, 2016 WL 4820635, at *10 (C.D. Cal. Aug. 31, 2016) (holding that it was a deceptive act or practice to seek to service or enforce rights under void loan because it created "the 'net impression' that the loans were enforceable and that borrowers were obligated to repay the loans in accordance with the terms of their loan agreements" when in fact "that impression was patently false — the loan agreements were void and/or the borrowers were not obligated to pay").

5.28.   These unfair and deceptive acts and practices affect the public interest because they have injured other persons, or have the capacity to injure other persons. These practices consist of public advertising, arise out of the contents of Elevate's ISA, which appears to be a standardized form issued to all of Elevate's Washington borrowers, practices in SDR Bootcamp recruitment, and conduct in Elevate's regular communication with borrowers seeking to enforce ISAs. For example, Mr. Rodriguez's collection email appears to be Mr. Rodriguez' template collection threat communication, because he appears to cut-and-paste it into communications with different borrowers without bothering to personalize it (for example, mis-gendering Ms. Zeng by failing to change masculine pronouns).

5.29.   Plaintiff suffered injury to her business or property as a result of Elevate's unfair and deceptive acts or practices in an amount to be proven at trial, but which includes, without limitation, fees to consult with an attorney to dispel uncertainty regarding the nature of her alleged obligations under the Zeng ISA, as well as the value of time diverted from her employment, in response to Elevate's actions. *See Panag*, 166 Wn.2d 27 at 62.

5.30.   In addition, to the extent that Elevate takes any action to assert any claim pursuant to the unenforceable and void Zeng ISA, whether as a counterclaim in this lawsuit, an arbitration or other action, or otherwise, Ms. Zeng reserves the right to amend her complaint and seek damages in the amount of costs and legal fees expended to defend against such action(s).  *See Ten Bridges, LLC v. Midas Mulligan, LLC*, 522 F. Supp. 3d 856, 873 (W.D.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 28

Wash. 2021) (legal costs incurred to defend interest and oppose party's assertation of rights under unlawful contract were injury under CPA).

### E.    Violations of the Consumer Protection Act

### (Against Leif)

5.31.   Ms. Zeng realleges and incorporates by reference the preceding paragraphs of this complaint as if fully set forth herein.

5.32.   Leif engaged in unfair or deceptive acts or practices by:

    a.   Creating and assisting Elevate in distributing and entering into the Zeng ISA and ISAs with other Washington residents that falsely state that they are enforceable contracts, when in truth and in fact the Zeng ISA and other ISAs issued to Washington residents by Elevate at times it was unlicensed by the WTCECB are and always has been unenforceable.

    b.   Creating and assisting Elevate in soliciting and entering into unconscionable contracts – i.e., the Zeng ISA and ISAs issued to other Washington residents.

    c.   Omitting language required by the FTC's Holder Rule from the Zeng ISA and ISAs issued to other Washington residents.[23]

5.33.   Leif also engaged in unfair or deceptive acts or practices by sending emails to Ms. Zeng asserting, implicitly and explicitly, that the Zeng ISA was an enforceable contract and that Ms. Zeng was required to comply with the obligations it purported to place on her. Leif further engaged in unfair or deceptive acts or practices by threatening to take actions to enforce the Zeng ISA which it could not lawfully take.

5.34.   These acts or practices are within trade or commerce because they relate to the attempted enforcement against a Washington resident of a contract arising out of the advertising and sale of educational services.

5.35.   These unfair and deceptive acts and practices affect the public interest because they have injured other persons, or have the capacity to injure other persons. These practices

---

[23] For the avoidance of doubt, Ms. Zeng is not asserted a claim or seeking relief under the Holder Rule itself.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 29

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

consist of Leif's regular and standardized communication with borrowers seeking to enforce ISAs. This conduct is part of Leif's regular business and is capable of repetition.

5.36.   Plaintiff suffered injury to her business or property as a result of Leif's unfair and deceptive acts or practices in an amount to be proven at trial, but which includes, without limitation, fees to consult with an attorney in an attempt to dispel uncertainty regarding the nature of her alleged obligations, as well as the value of time diverted from her employment, in response to Leif's unfair and deceptive actions. *See Panag*, 166 Wn.2d at 62.

5.37.   In addition, to the extent that Leif takes any action to assert any claim pursuant to the unenforceable and void Zeng ISA, whether as a counterclaim lawsuit, an arbitration or other action, or otherwise, Ms. Zeng reserves the right to amend her complaint and seek damages in the amount of costs and legal fees expended to defend against such action(s).  *See Ten Bridges*, 522 F. Supp. 3d at 873.

### F.   Negligent Misrepresentation

### (Against All Defendants)

5.38.   Ms. Zeng realleges and incorporates by reference the preceding paragraphs of this complaint as if fully set forth herein.

5.39.   As alleged in more detail above, each of the Defendants supplied information to Ms. Zeng for guidance in her business transactions – i.e., entering into a contract with Elevate and her purported obligations under the Zeng ISA – that was false.

5.40.   Each of the Defendants knew or should have known that the information they supplied to Ms. Zeng was to guide her in her business transactions because Elevate and Leif were seeking to enter into a business transaction with her, and to enforce the purported terms of a contract with her.

5.41.   Each of the defendants was negligent in obtaining or communicating the false information.

5.42.   As alleged in more detail above, Ms. Zeng relied on the false information supplied by Defendants, including without limitation when she chose to sign the Zeng ISA and

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES - 30

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

participate, however briefly, in the SDR Bootcamp.

5.43.    Ms. Zeng's reliance on the false information supplied by each defendant was reasonable.

5.44.    The false information supplied to Ms. Zeng proximately caused her to suffer damages in an amount to be proven at trial.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ms. Zeng prays for the following relief:

1.    Enter judgment declaring Ms. Zeng's ISA to be unenforceable;

2.    Enter judgment declaring Ms. Zeng's ISA to be voidable, and that she has effectively exercised her option to void it, such that the Zeng ISA is void;

3.    Award Ms. Zeng her actual damages, as well as treble damages pursuant to the CPA, together with pre-judgment interest and post-judgment interest;

4.    Award Ms. Zeng her costs and reasonable attorney's fees, pursuant to the CPA, RCW 19.86.090;

5.    Enter appropriate injunctions prohibiting Defendants from engaging in violations of the CPA toward Ms. Zeng and other Washington residents pursuant to Ms. Zeng's action as a "private attorney general" under the CPA; and

6.    Any other relief the Court deems just.


DATED: December 16, 2021.


JENSEN MORSE BAKER PLLC


By *s/ Benjamin J. Roesch*
Benjamin J. Roesch, WSBA No. 39960
benjamin.roesch@jmblawyers.com
(206) 664-1835

Attorneys for Plaintiff

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE
RELIEF, AND DAMAGES - 31

# *EXHIBIT A*



## Sales Development Representative

Elevate · Boston, MA (Remote)

$60,000/yr - $85,000/yr · Full-time · Entry level

1-10 employees · Professional Training & Coaching

See recent hiring trends for Elevate. Retry Premium Free

Actively recruiting

No longer accepting applications

### About the job

Seeking the top 20 sales reps who want to break into a career in Technology and Software Sales.

If accepted, your skills will be funneled into our sales development training to sharpen your skills and graduate into an SDR role with a comp range of $60-$82k for the first year.

Elevate is a sales Bootcamp building the next generation of sales leaders, preparing members to launch a career in tech.

The Elevate Bootcamp is 100% remote, part-time, and runs for 10 weeks. You'll be starting immediately, be coached by industry experts, sell with startups, and join a community of mentors and classmates.

Only the most prepared and motivated applicants will be accepted. No experience necessary but a willingness to learn and pursue a career in tech is a must.

Submit an application here to be considered -> elevatehire.co

See less ⌃

#### Contact the job poster

Norman Rodriguez · 2nd
CEO at Elevate | Building Nex...

**PREMIUM**

Send InMail

### Elevate provided pay range

This range is provided by Elevate. Your actual pay will be based on your skills and experience — talk with your recruiter to learn more.

Base pay range
$60,000/yr - $85,000/yr

### Featured benefits

Based on information provided by the employer

Medical insurance   Vision insurance   Dental insurance   401(k)

### About the company

**Elevate**
1,820 followers

+ Follow

Professional Training & Coaching · 2-10 employees · 62 on LinkedIn

Our team at Elevate invests in the highest potential candidates to give them an unfair advantage and launch the next step of their career

...show more

See more

Set alert for similar jobs

Get ahead with Premium Career

Contact recruiters directly

See who's viewing your profile

Stand out as a featured applicant

Retry Premium Free

Looking for talent?  Post a job

### Similar Jobs

Sales Development Representative
Podium
Boston, MA
Be an early applicant
New

Sales Development Representative I
ON24
Boston, MA
Be an early applicant
1 week ago

Sales Development Representative
Sitecore
Manchester, NH
Be an early applicant
2 months ago · Apply easily

Sales Development Representative
Trimble Inc.
Maynard, MA
Be an early applicant
2 weeks ago

Sales Development Representative
Sitecore
Manchester, NH
Be an early applicant
3 months ago · Apply easily

Sales Development Representative
Rave Mobile Safety
Framingham, MA
Be an early applicant
2 weeks ago

Sales Development Representative
Tamr
Cambridge, MA
Be an early applicant
2 weeks ago · Apply easily

Senior Sales Development Representative
Allego
Waltham, MA
Be an early applicant
2 days ago · Apply easily

Senior Sales Development Representative
Talend
Boston, MA
Be an early applicant
2 weeks ago

Sales Development Representative
Lytx, Inc.

Sales Development Representative
Trimble Inc.

Sales Development Representative I
ON24

