HONORABLE RICHARD A. JONES

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FANXIN ZENG, | ) |
|                     Plaintiff, | ) Case No. 2:22-cv-00052-RAJ |
|      v. | ) |
| | ) **PLAINTIFF FANXIN ZENG'S** |
| TOP APPLICANT, INC. d/b/a ELEVATE, | ) **OPPOSITION TO JOINT MOTION TO** |
| ELEVATE HIRE, and TOP APPLICANT, | ) **COMPEL ARBITRATION AND STAY** |
| a corporation; and LEIF TECHNOLOGIES, | ) **PROCEEDINGS** |
| INC., a corporation, | ) |
| | ) **NOTING DATE: FEBRUARY 18, 2022** |
|                  Defendants. | ) |

## I.      INTRODUCTION

This case arises out of a scheme by the for-profit bootcamp Top Applicant, Inc. ("Elevate") to lure jobseekers into oppressive $17,000, multi-year income share agreements ("ISAs") – contracts so novel that not even Defendants seem certain about their tax consequences or whether they are "loans" – in exchange for *potential* admission into a 10-week online course for which she was not provided with a course catalog. Elevate crudely and deceptively threatening collection on the ISA, and together with Leif Technologies, Inc. ("Leif") now seeks to avoid the consequences of its unfair and deceptive practices. Defendants

PLAINTIFF FANXIN ZENG'S OPPOSITION TO JOINT
MOTION TO COMPEL ARBITRATION - 1
CASE NO. 2:22-CV-00052-RAJ

seek to compel arbitration based on a clause on that ISA (the "Arbitration Clause"), but their motion fails for several independent reasons.

The Arbitration Clause is procedurally unconscionable because it was induced by deceptive practices and high-pressure tactics. Elevate lured Ms. Zeng in using a deceptive "job posting" advertisement, complete with salary information and benefits, when in fact it was selling educational services. Elevate then pressured Ms. Zeng into signing a $17,000 ISA "asap" in order to even be *considered* for admission into its bootcamp, without presenting her with a course catalog or the school's curriculum, presenting it as an "assignment" to complete an "application" and "account setup" – not a binding financial contract. The web-based "application" process continued this deception and buried the Arbitration Clause in fine print.

The Arbitration Clause is also substantively unconscionable. The Ninth Circuit has held that unilateral, non-mutual arbitration clauses like this one are unconscionable and unenforceable under Washington law. Moreover, the Arbitration Clause operates to prevent Ms. Zeng from bringing or participating in this "private attorney general action" under Washington's Consumer Protection Act, RCW 19.86 (the "CPA") for injunctive relief benefitting other Washington consumers in any forum – arbitration or court. This prohibition is contrary to well-established Washington public policy that prohibits enforcement of contracts that exculpate parties from the CPA's remedies for unfair for deceptive acts or practices. Defendants' motion therefore should be denied.

## II.    FACTUAL BACKGROUND

Ms. Zeng, an immigrant from China, discovered Elevate when she came across a "job posting" advertisement for Elevate on LinkedIn with a location of Seattle while looking for a job. Zeng Decl., ¶¶ 2-5; Ex. A. LinkedIn allows companies to specify job locations in their

PLAINTIFF FANXIN ZENG'S OPPOSITION TO JOINT
MOTION TO COMPEL ARBITRATION - 2
CASE NO. 2:22-CV-00052-RAJ

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

advertisement to target job seekers in those markets, *eee, e.g.,* Roesch Decl., Ex. A-D, and Elevate confirms its contact with Ms. Zeng through LinkedIn. Dkt. 16 at ¶ 6. Ms. Zeng contacted Elevate only because she believed it was hiring employees at the salary and with the medical and retirement benefits advertised. Zeng Decl., ¶ 5-6.

According to Elevate's April 2, 2021 "welcome email," Ms. Zeng was being considered for admission "as one of the top 10% of applicants," and stated:

> As next steps, we'll need you to lock in your seat asap by completing an application on Leif, our ISA provider: Leif - Application & Account Setup [hyperlink omitted]
>
> - Your placement in the Elevate SDR Bootcamp is tentative until you complete your account and accept our calendar invitation.
>
> Once this assignment is complete we'll review your reply and get back to you with the final decision on your enrollment.

Zeng Decl., Ex. C. This email placed time pressure on Ms. Zeng because her place was "tentative" and "a final decision on [her] enrollment" would only be made after she completed "an application on Leif." Zeng Decl., ¶ 9; Ex. C. In response, Ms. Zeng followed the link and executed the ISA the same day. Zeng Decl., ¶¶ 9, 12; Dkt. 15-2 at pp. 12-13 of 13.

At that time, Ms. Zeng had not been provided with Elevate's course catalog, a syllabus, or the bootcamp's curriculum. Zeng Decl., ¶ 11. Ms. Zeng was not provided with the curriculum until April 12, 2021 – ten days *after* she had signed the ISA. Zeng Decl, ¶ 11; Ex. E. If she had been provided with a course catalog or the curriculum, she would not have proceeded with her application or signed the ISA. Zeng Decl., ¶ 11.

Elevate also deceptively characterized the "assignment" relating to Leif as an "application" and "account setup" that was the "next step[]" in Elevate's enrollment process, and provided a hyperlink labled "Leif – Application and Account Setup." Zeng Decl. Ex. C. Leif's web portal then prompts consumers "to 'create an application.'" Dkt. 15 at ¶ 9; Dkt. 15-

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

1 at p. 3 of 8.[1]  Ms. Zeng expected to fill out an "application" – as part of her application to Elevate – rather than sign a binding contract.  Zeng Decl., ¶ 10.  In fact, the "application" and "account setup" was a bait-and-switch that resulted in Ms. Zeng purportedly entering into a $17,000 financial contract, Dkt. 15-1 at p. 7 of 8; Dkt. 15-2, as a condition of even being *considered* for admission.

In fact, Ms. Zeng had extensive professional sales experience dating back to 2013 in both China and the United States.  Zeng Decl., ¶¶ 2, 7; Ex. B.  In reality, she never had any need for Elevate's training to find a job, and had already secured an interview with her eventual employer on April 1, 2021 – the day before Elevate's "welcome email" and prompting to "apply" for the ISA.  *Id.* at ¶ 19.  She received a job offer from that company on April 12, 2021 – the day she received Elevate's curriculum, and the day before her brief participation in Elevate's bootcamp began.  *Id.*; Ex. E.  It quickly became apparent that in light of Ms. Zeng's extensive and successful sales experience – and the fact that she had already independently got a job – Elevate's instruction and projects could provide her with no benefit and she therefore withdrew in short order.  *Id.* at ¶ 20.

Months later, Ms. Zeng began to experience deceptive and harassing attempts to enforce the ISA.  For example, on July 11, 2021 Elevate Co-Founder and COO Asher Alter sent an email demanding compliance with the ISA's terms, and characterizing it as a "loan."  Zeng Decl., Ex. F.  This contradicts the ISA, which states "THIS AGREEMENT DOES NOT CONSTITUTE A LOAN."  Dkt. 15-2 at 2 of 13.  On September 19, 2020 Mr. Rodriguez sent an email comparing Ms. Zeng and Elevate with a dating-app-induced one-night-stand, referring

---

[1] The sample "walk-through" provided by Leif is for an entirely different school, whose ISAs start with a "DISCLOSURE" that is absent from Ms. Zeng's ISA.  *Compare* Dkt. 15-1 at 5-6 of 8 *with* Dkt. 15-2.  *See also* Zeng Decl., ¶ 13.  It is unclear whether the example Leif provided reflects the ISA "application" process for Elevate's prospective students.

PLAINTIFF FANXIN ZENG'S OPPOSITION TO JOINT
MOTION TO COMPEL ARBITRATION - 4
CASE NO. 2:22-CV-00052-RAJ

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

to her as a "guy" and telling her to "man up" and "pay the ISA as agreed upon," acknowledging that she may feel "embarrassment" and "like a fool" for signing the ISA, and that she "probably haven't read" it. Zeng Decl., Ex. G.

Ms. Zeng exercised her option to void the ISA, Roesch Decl., Ex. E, and brought suit for declaratory relief, recovery of her damages, and injunctions under Washington's CPA to protect other Washingtonians from similar unfair and deceptive acts and practices. Dkt. 1-2.

### III.    ISSUES PRESENTED

Whether the Court should refuse to compel arbitration because the ISA's Arbitration Clause is both procedurally and substantively unconscionable.

### IV.    ARGUMENT

**A.    The Court May Not Enforce Unconscionable Arbitration Clauses.**

Agreements to arbitrate may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "In Washington, *either* substantive *or* procedural unconscionability is sufficient to void a contract." *Gandee v. LDL Freedom Enterprises, Inc.*, 176 Wn.2d 598, 603, 293 P.3d 1197 (2013) (emphasis added). Unconscionability is a question of law for the courts. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 302-03, 103 P.3d 753 (2004).

**B.    Washington Law Determines Whether the Arbitration Clause Is Unconscionable.**

Defendants argue that New York law applies to this matter pursuant to the ISA's choice-of-law clause. Dkt. 13 at 8, fn.5. That clause is unenforceable because (1) without the provision, Washington law would apply; (2) New York law, to the extent it conflicts with Washington's violates a fundamental public policy of Washington; and (3) Washington's interest in the determination of the issue materially outweighs New York's interest. *Erwin v.*

PLAINTIFF FANXIN ZENG'S OPPOSITION TO JOINT
MOTION TO COMPEL ARBITRATION - 5
CASE NO. 2:22-CV-00052-RAJ

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

*Cotter Health Ctrs.*, 161 Wn.2d 676, 690–91, 167 P.3d 1112 (2007).

First, absent the choice-of-law provision, Washington law would apply. Washington has the "most significant relationship" with the ISA and Arbitration Clause because Elevate targeted its "job posting" advertisement into Washington, it is the relevant place of contracting (where Ms. Zeng electronically signed the ISA), the place of Elevate's performance (where Ms. Zeng was to receive instruction and complete her coursework), the place of Ms. Zeng's performance (the location from which she was to provide information about her income, and where the bank from which her payments were to be withdrawn is located), and Ms. Zeng's domicile. *See* Zeng Decl., ¶ 21. Moreover, Washington law renders financial contracts with Washington students voidable if they even purport to choose another state's law. RCW 28C.10.170(1) ("If a contract or evidence of indebtedness contains any of the following agreements, the contract is voidable at the option of the student or prospective student: (1) That the law of another state shall apply…."). RCW 28C.10.170 focuses on the contract for payment, and according to its plain language applies regardless of whether the school was required to be licensed in Washington.[2]

Second, the application of New York law would violate fundamental Washington policy. *See* RCW 28C.10.170(1). Washington's public policy against exculpation by Defendants of liability for unfair and deceptive acts or practices under the CPA, *see infra*, is also a fundamental public policy. *McKee v. AT & T Corp.*, 164 Wn.2d 372, 386, 191 P.3d 845 (2008) ("Washington's strong Consumer Protection Act policy … is a 'fundamental policy' contemplated by the Restatement, supra, § 187(2)(b)."). Plaintiff is unaware of any applicable

---

[2] This rule applies both to private vocational schools like Elevate, as well as to private degree-granting institutions. *See* RCW 28B.85.140(1).

PLAINTIFF FANXIN ZENG'S OPPOSITION TO JOINT
MOTION TO COMPEL ARBITRATION - 6
CASE NO. 2:22-CV-00052-RAJ

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

New York law analogous to RCW 28C.10.170(1) or New York law against exculpation of remedies under Washington's CPA.

Finally, Washington's interest in an ISA signed by its resident and the enforcement of its CPA for the protection of its residents "materially outweighs New York's limited interest in this matter." *McKee*, 164 Wn.2d at 386. Indeed, Leif – the only party with a connection to New York, Dkt. 1 at 3-4 – may no longer even service Elevate's ISAs. *See* Dkt. 4 at ¶ 7 (using past tense). The ISA's New York choice-of-law provision is unenforceable and Washington law determines unconscionability of the Arbitration Clause.

## C. The Arbitration Clause Is Procedurally Unconscionable

To determine procedural unconscionability, the Court looks to "[t]he manner in which the contract was entered, whether [Plaintiff] had 'a reasonable opportunity to understand the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine print.'" *Zuver*, 153 Wn.2d at 304 (quoting *Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 260 (1975)) (internal citation omitted). Evidence includes "fraud, misrepresentation, undue influence, duress, high-pressure tactics, overreaching, fine print, or otherwise taking advantage by [Elevate] of any necessity or weakness in [Plaintiff]." *Id.* at 306-07.

### 1. The ISA (and its Arbitration Clause) was induced through deception, high-pressure tactics, and overreaching.

Elevate's relationship to Ms. Zeng has been typified by deception since the beginning. Ms. Zeng discovered Elevate when she came across a "job posting" for Elevate on LinkedIn with "Seattle" in the location designation while looking for a job. Zeng Decl., ¶ Advertising for-profit educational services through job advertisements or in "help wanted" publications is deceptive, and both Washington and Arizona (where Elevate is located) specifically prohibit this practice. *See* RCW 28C.10.110(2); WAC 490-105-170(3); Ariz. Admin. Code R4-39-

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

304(B)(1).[3] Elevate's "job posting" advertisement deceived Ms. Zeng, who only contacted Elevate because she reasonably believed that Elevate was seeking to hire employees at the stated salary and with the medical and retirement benefits advertised. Zeng Decl., ¶ 6. Under Washington's CPA, "a practice is unfair or deceptive if it induces contact through deception, even if the consumer later becomes fully informed before entering into the contract." *Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 116, 22 P.3d 818 (2001).

Elevate's April 2, 2021 "welcome email" implied that admission was competitive by stating that Ms. Zeng was being considered "as one of the top 10% of applicants," but warned:

> As **next steps**, we'll need you to **lock in your seat asap** by completing an **application** on Leif, our ISA provider: *Leif - Application & Account Setup* [hyperlink omitted]
>
> - Your placement in the Elevate SDR Bootcamp is **tentative until you complete your account** and accept our calendar invitation.
>
> Once this assignment is complete we'll review your reply and get back to you with the final decision on your enrollment.

Zeng Decl., Ex. C (emphasis added). Responding to this pressure tactic, Ms. Zeng followed the link and executed the ISA that day. Zeng Decl., ¶¶ 9, 12; Dkt. 15-2 at 12-13 of 13.

Elevate also deceptively characterized the "assignment" relating to Leif as an "application" and "account setup" that was the "next step[]" in Elevate's enrollment process, and the hyperlink states "Leif – Application and Account Setup." Zeng Decl. Ex. C. Leif's web portal continues this deception by prompting consumers "to 'create an application.'" Dkt.

---

[3] While the Court need not decide in this motion whether Elevate was required to be licensed in Washington as a private vocational school, Washington's Workforce Training and Continuing Education Board has publicly explained that "if an out of state school is advertising directly to Washington State students, they are required to be licensed." https://www.nc-sara.org/agency/washington-workforce-training-and-education-coordinating-board. Moreover, a school establishes a "physical presence" in Washington by directly "advertising and marketing to Washington residents." WAC 490-105-030.

JENSEN MORSE BAKER PLLC 1809 SEVENTH AVENUE, SUITE 410 SEATTLE, WASHINGTON 98101 PHONE: 206.682.1644

15 at ¶ 9; Dkt. 15-1 at p. 3 of 8.[4]  Based on these representations, Ms. Zeng expected to fill out an "application" – as part of her application with Elevate – rather than being faced with a demand to sign a binding contract.  Zeng Decl., ¶ 10.

The "application" and "account setup" was a bait-and-switch that resulted in Ms. Zeng purportedly entering into a $17,000 financial contract, Dkt. 15-1 at p. 7 of 8; Dkt. 15-2, as a condition of even being *considered* for admission.  Ms. Zeng did not fully understand what she was signing.  Zeng Decl., ¶ 15.  Indeed, Ms. Zeng did not receive an email from Elevate confirming her place until April 6.  Zeng Decl., Ex. D.  Ms. Zeng was not provided with a course catalog for the bootcamp, and was not given the bootcamp's curriculum until April 12, 2021 – ten days *after* she had signed the ISA.  Zeng Decl, ¶ 11; Ex. E.  As a 10-week bootcamp providing instruction to prepare students for a vocation or profession, Elevate is a "private vocational school" under Washington and Arizona law.  RCW 28C.10.020(7); Ariz. Rev. Stat. Ann. § 32-3001(6).[5]  Laws governing enrollment and student financing therefore provide relevant standards for procedural unconscionability.  Both Washington and Arizona law require private vocational schools to publish and provide catalogs.  *See* RCW 28C.10.050; WAC 490-105-042; Ariz. Admin. Code R4-39-301(B) (unaccredited school must "make the catalog required under subsection (A) available to students and prospective students in a written or electronic format.").  Had Ms. Zeng been provided with a course catalog describing Elevate's education program, she would not have signed the ISA.  Zeng Decl., ¶ 11.

---

[4] The sample "walk-through" provided by Leif is for an entirely different school, whose ISAs start with a "DISCLOSURE" that is absent, without any explanation, from Ms. Zeng's ISA. *Compare* Dkt. 15-1 at 5-6 of 8 *with* Dkt. 15-2.  *See also* Zeng Decl., ¶ 13.  It is unclear whether Leif's example reflects the ISA "application" process for Elevate's prospective students.

[5] Ms. Zeng is not suggesting that Arizona law applies to interpreting the ISA, or displaces Washington's CPA.  However, to the extent that Elevate contends Washington education law does not apply to it, it cannot escape the laws of its home jurisdiction.

Elevate's presentation of the ISA to Ms. Zeng also violated both Washington and Arizona law. Washington law prohibited Elevate from engaging "in any practice regarding the sale of, or inducing of students to obtain, specific consumer student loan products to fund education that financially benefits any person or entity that has an ownership interest in the institution." RCW 28C.10.050(3). Elevate also failed to "[d]iscuss with each potential student the potential student's obligations in signing any enrollment contract and/or incurring any debt for educational purposes." RCW 28C.10.050(h); Zeng Decl., ¶ 15. Arizona law prohibits a staff member "responsible for student admission or recruitment" from making "final decisions regarding … educational loans, payment schedules, financing options, or refunds." Ariz. Admin. Code R4-39-305(C)(3). Here, Mr. Rodriguez sent Ms. Zeng's "welcome" email directing her to the ISA "application" and the confirmation emails, Zeng Decl., Ex. C and D, and also signed the ISA on behalf of Elevate. Dkt. 15-2 at p. 13 of 13.

Elevate's deceptive practices, high pressure tactics, and disregard for laws governing private vocational school admissions and financing while binding *prospective* students to $17,000, multi-year financial obligations and associated arbitration provisions is the type of overreaching by a party in a position of power that deprives consumers of a meaningful choice and requires a finding of procedural unconscionability. *Zuver*, 153 Wn.2d at 306-07.

The unconscionability of the ISA's $17,000 pre-enrollment obligation and Arbitration Clause is particularly egregious because the ISA's "RETAINED RIGHTS" paragraph states that "[n]o breach or the termination of this Agreement will affect the validity of any of your accrued obligations owing to [Elevate] under this Agreement." Dkt. 15-2 at p. 8 of 13. Elevate therefore locked Ms. Zeng into the ISA and Arbitration Clause without undertaking any obligation to either admit Ms. Zeng or actually provide beneficial educational services. *See*

PLAINTIFF FANXIN ZENG'S OPPOSITION TO JOINT
MOTION TO COMPEL ARBITRATION - 10
CASE NO. 2:22-CV-00052-RAJ

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

*Metro. Park Dist. of Tacoma v. Griffith*, 106 Wn.2d 425, 434, 723 P.2d 1093 (1986) ("A supposed promise is illusory when its provisions make its performance optional or discretionary on the part of the claimed promisor.")

> **2. Leif's web-based application process downplays and draws attention away from the Arbitration Clause.**

In addition to perpetuating Elevate's deception that its process was merely an "application," Leif's web-based ISA application effectively buries the Arbitration Clause in fine print by repeatedly drawing the consumer's attention to other ISA provisions selected by Leif. *See* Dkt. 15-1 at p. 6 of 8. According to Leif, the highlighted provisions do not include the Arbitration Clause, Dkt. 15 at ¶ 11, and the "application" process does not appear to require acknowledgement the Arbitration Clause. Indeed, the Arbitration Clause does not appear anywhere in Dkt. 15-1, including Leif's example "follow up" email. Dkt. 15-1 at p. 8 of 8.

The "applicantion's" downplaying of the Arbitration Clause is particularly problematic because ISAs are so new and novel that even Defendants are uncertain how the ISA should be reported to the IRS. *See* Dkt. 15-2 at p. 7 of 13 ("Company ***believes*** that this tax treatment is ***more likely than not*** the proper characterization for federal income tax purposes") (emphasis added). Like most consumers, Ms. Zeng, who is an immigrant and not a native English speaker, had no previous experience with ISAs and relied on Defendants to highlight and explain the long, complex, and novel document. Zeng Decl., ¶ 15. By drawing Ms. Zeng's attention away from the Arbitration Clause, Defendants buried it within the long, complex, and unfamiliar ISA, rendering it procedurally unconscionable.

Leif's "application" process resulted in an ISA that mis-spelled Ms. Zeng's name, *see* Dkt. 15-2 at 13 of 13, and Elevate's own collection emails establish that that it was insufficient to apprise her of the ISA's terms. When Elevate CEO Norman Rodriguez emailed Ms. Zeng to

PLAINTIFF FANXIN ZENG'S OPPOSITION TO JOINT
MOTION TO COMPEL ARBITRATION - 11
CASE NO. 2:22-CV-00052-RAJ

demand compliance with the ISA, he stated that "you probably haven't read it."  Zeng Decl., Ex. G.  Where the Elevate employee who directed Ms. Zeng to the Leif "application" and signed the ISA on Elevate's behalf believes that Elevate's students have not read the ISA – and the Arbitration Clause – there can be no dispute that it is procedurally unconscionable.

### 3.    The rescission period cannot cure procedural unconscionability.

Defendants' argument that the inclusion of an "opt-out" period for the Arbitration Clause eliminates procedural unconscionability is unsupported in Washington law.  See Dkt. 13 at 10.  Defendants rely on *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016), to argue that the opt-out provision means that the Arbitration Clause is not adhesive.  *See* Dkt. 13 at 10.  But while the *Mohamed* court found the adhesive nature of a contract to be a "threshold inquiry" for procedural unconscionability under California law, *id.* at 1211, Washington law contains no such requirement.  In any event, *Mohamed* relied on *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002), which explained that California's "adhesion" requirement applied only where the agreement "also lacked any other indicia of procedural unconscionability."  Defendants' inclusion of an "opt-out" provision does not eliminate the procedural unconscionability detailed above.

Finally, Defendants' contention that "[t]here is simply no evidence that the nature of the ISA or the Arbitration Agreement was concealed from Zeng in any way," Dkt. 13 at 10, is contradicted by their own statements.  For example, the ISA states that "THIS AGREEMENT DOES NOT CONSTITUTE A LOAN."  Dkt. 15-2 at p. 2 of 13.  But in seeking to collect from Ms. Zeng, Elevate's COO described it as a "loan."  Zeng Decl., Ex. F.  And Defendants *currently* contend that the FAA applies because Elevate hired Leif "to manage and process

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

student loan agreements in Washington." Dkt. 13 at 7, fn. 3.[6] The Arbitration Clause is procedurally unconscionable, and Defendants' motion should be denied.

**D.    The Arbitration Clause Is Substantively Unconscionable.**

Under Washington law, "[s]ubstantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh." *Zuver*, 153 Wn.2d at 303. Moreover, the Washington Supreme Court has established that "[a]n agreement that has a tendency 'to be against the public good, or to be injurious to the public' violates public policy." *Scott v. Cingular Wireless*, 160 Wn.2d 851, 857, 161 P.3d 1000 (2007) (quoting *King v. Riveland*, 125 Wn.2d 500, 511, 886 P.2d 160 (1994)). "An agreement that violates public policy may be void and unenforceable." *Id.* The Arbitration Clause is substantively unconscionable and unenforceable for several independent reasons.

**1.    The Arbitration Clause is substantively unconscionable because it is unilateral.**

The Ninth Circuit has established that non-mutual arbitration provisions like the Arbitration Clause are substantively unconscionable under Washington law. In *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1260-61 (9th Cir.2005), the court noted that under California law, non-mutual arbitration clauses that force one side to arbitrate while leaving the other free to choose a judicial forum are substantively unconscionable. *Id.* at 1260-61 (citing *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002)). The *Al-Safin* court then held that the non-mutual arbitration "is substantively unconscionable under Washington law," noting that the Washington Supreme Court had cited *Ingle* and *Adams* with approval, and that California

---

[6] While Defendants' motion references the Complaint, the referenced paragraphs do not describe ISAs as "student loan agreements," and this characterization therefore appears to be Defendants' own.

PLAINTIFF FANXIN ZENG'S OPPOSITION TO JOINT
MOTION TO COMPEL ARBITRATION - 13
CASE NO. 2:22-CV-00052-RAJ

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

"applies virtually the same definition of substantive unconscionability as Washington." 394 F.3d at 1261. Indeed, a non-mutual arbitration clause is by definition "one-sided" and "overly harsh," and in *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 351, 103 P.3d 773 (2004), the Washington Supreme Court cited *Ingle* with approval for the proposition that unilateral arbitration provisions are substantively unconscionable.

Here, the Arbitration Clause is unambiguously unilateral. The Arbitration Clause provides that Ms. Zeng "agrees that any Claim ***against the Company*** shall be submitted to and resolved by binding arbitration" and "includes … any Person named as a Co-Defendant with Company." Dkt. 15-2 at p. 10 of 13 (emphasis added). Conversely, the Arbitration Clause did not require Defendants to arbitrate their claims against Ms. Zeng. On the contrary, Elevate reserved the right to "enforce all legal rights and remedies" in collecting the full $17,000 amount, Dkt. 15-2 at p. 8 of 13, including presumably the right to proceed in court.

As one Washington court held in following *Al-Safin*, a non-mutual arbitration provisions like this one are "one-sided and overly harsh" because if enforced "Defendants would have the last word in determining which forum it preferred for the resolution of [the consumer's] claims while also retaining the right to determine which forum it preferred for its own claims," thereby divesting the consumer "of any control over the forum" and granting Defendants full control over that decision." *Reimer v. Ctr. for Counseling & Health Res.*, C07-1123 MJP, 2008 WL 2782899, at *2 (W.D. Wash. July 15, 2008). The ISA provides no business justification for the unilateral nature of the Arbitration Clause.

This Court should follow *Al-Safin* and hold that the non-mutual nature of the Arbitration Clause renders it substantively unconscionable under Washington law. Moreover, the Court cannot sever any "non-mutual" portions of the Arbitration Clause because the *entire* Arbitration

PLAINTIFF FANXIN ZENG'S OPPOSITION TO JOINT
MOTION TO COMPEL ARBITRATION - 14
CASE NO. 2:22-CV-00052-RAJ

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

Clause is non-mutual. Defendants' motion must therefore be denied on this basis alone.

**2.**    **The Arbitration Clause is substantively unconscionable because it operates to exculpate Defendants from remedies under Washington's Consumer Protection Act.**

The Arbitration Clause contains a "Class Action Waiver" paragraph that effectively prevents consumers from seeking public injunctive relief in any forum when enforcing the CAP as a "private attorney general":

> **CLASS ACTION WAIVER: IF A CLAIM IS ARBITRATED, OBLIGOR WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A CLASS ACTION, A PRIVATE ATTORNEY GENERAL ACTION, OR OTHER REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER.** Further, unless both Obligor and Company agree otherwise in writing, the arbitrator may not join or consolidate Claims with claims of any other Persons. The arbitrator shall have no authority to conduct any class, private attorney general, or other representative proceeding, and shall award declaratory or injunctive relief only to the extent necessary to provide relief warranted by the Claim.

Dkt 15-2 at p. 11 of 13. This provision applies to far more than "class actions," but extends to "private attorney general actions" and "other representative actions." *Id.*

Ms. Zeng is not seeking to bring or participate in a "class action" lawsuit. Instead, she seeks individual relief, as well as acting as a "private attorney general" in seeking an injunction under RCW 19.86.090 to prevent Defendants from engaging in unfair and deceptive acts or practices against other Washington residents. Dkt. 1-2 at pp. 2-3, 31.

**a.**    **Washington law prohibits clauses that exculpate Defendants from consumers' remedies under the CPA.**

"The CPA is designed to protect consumers from unfair and deceptive acts and practices in commerce," and "[t]o achieve this purpose, the legislature requires that the CPA 'be liberally construed that its beneficial purposes may be served.'" *Scott*, 160 Wn.2d at 853 (quoting RCW 19.86.920). When the CPA was first enacted in 1961, only the Attorney General was permitted

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

to enforce it. However, "[i]n apparent response to the escalating need for additional enforcement capabilities, the State Legislature in 1971 amended the CPA to provide for a private right of action whereby individual citizens would be encouraged to bring suit to enforce the CPA." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784, 719 P.2d 531, 534 (1986). The Legislature specifically authorized private attorneys general "to enjoin further violations." RCW 19.86.090. Broad injunctive relief in private attorney general actions serves the CPA's purpose is "to protect the public." RCW 19.86.920.

"Private actions by private citizens are now an ***integral part*** of CPA enforcement." *Scott*, 160 Wn.2d at 853 (emphasis added). "Private citizens act as private attorneys general in ***protecting the public's interest*** against unfair and deceptive acts and practices in trade and commerce." *Id.* (citing *Lightfoot v. MacDonald*, 86 Wn.2d 331, 335–36, 544 P.2d 88 (1976)) (emphasis added). Thus, "the CPA contemplates that individual consumers will act as 'private attorneys general,' harnessing individual interests in order to promote the public good." *Id.* at 854 (citing *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 313, 858 P.2d 1054 (1993)). Indeed, CPA enforcement by "private attorneys general" is so important that the Washington Supreme Court has held that "Washington's strong Consumer Protection Act policy favoring class adjudication of small-dollar claims is a 'fundamental policy' contemplated by the Restatement, supra, § 187(2)(b)." *McKee*, 164 Wn.2d at 386. The *McKee* Court's *application* of that policy to class action waivers has since been preempted by the Federal Arbitration Act ("FAA"), *see infra*, but Washington's underlying "strong" and "fundamental" public policy promoting CPA enforcement has not changed. Courts continue to cite *McKee*'s public policy holdings. *E.g.*, *Ohring v. Unisea, Inc.*, C21-359 TSZ, 2021 WL 2936641, at *7-8 (W.D. Wash. July 13, 2021).

PLAINTIFF FANXIN ZENG'S OPPOSITION TO JOINT
MOTION TO COMPEL ARBITRATION - 16
CASE NO. 2:22-CV-00052-RAJ

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

Washington's Supreme Court has been emphatic that "[e]xculpation from any potential liability for unfair or deceptive acts or practices in commerce clearly violates public policy." *Scott*, 160 Wn.2d at 854-55. "A clause that unilaterally and severely limits the remedies of only one side is substantively unconscionable under Washington law for denying any meaningful remedy." *Id.* at 857. *See also Zuver*, 153 Wn.2d at 318 (finding "remedies limitation provision" substantively unconscionable). Washington courts therefore generally refuse to find waiver of CPA rights and remedies. *See Keyes v. Bollinger*, 31 Wn. App. 286, 294, 640 P.2d 1077, 1083 (1982) (finding of CPA waiver resulting from "closing a housing transaction characterized by the contractor's unfair or deceptive acts or practices does not serve the Act's 'beneficial purposes'"). Indeed, even a clause that "effectively chills [plaintiff's] ability to bring suit under the CPA, it is one-sided and overly harsh" and substantively unconscionable. *Gandee*, 176 Wn.2d at 606. As explained below, the Arbitration Clause severely limits Ms. Zeng's CPA remedies, and completely denies the CPA's protection to other consumers who would be protected by a broad injunction.

Washington's anti-exculpatory CPA policy is consistent with the Supreme Court's repeated refusal to enforce a "contractual modification of a statute" in a variety of contexts, and its statement that "[w]e will not allow waiver of statutory protections lightly." *Bain v. Metro. Mortgage Grp., Inc.*, 175 Wn.2d 83, 107-08, 285 P.3d 34 (2012) (refusing to allow contractual modification of Deed of Trust Act) (citing *Godfrey v. Hartford Ins. Cas. Co.*, 142 Wn.2d 885, 16 P.3d 617 (2001) (business could not contract out of portions of Washington Arbitration Act); *Nat'l Union Ins. Co. of Pittsburgh, Pa. v. Puget Sound Power & Light*, 94 Wn.App. 163, 177, 972 P.2d 481 (1999) (business and utility could not contract around statutory uniformity requirements); *State ex rel. Standard Optical Co. v. Superior Court*, 17 Wn.2d 323, 329, 135

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

P.2d 839 (1943) (corporation could not avoid statutory limitations on scope of practice by contract with those who could so practice)). By the same token, Defendants cannot contract their way back to 1970, when only Washington's Attorney General could seek injunctive relief under the CPA for the benefit of all Washington consumers.

In *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), the California Supreme Court held that a contractual agreement purporting to waive a party's right to seek public injunctive relief in any forum is unenforceable. As in Washington, various California consumer protection statutes make public injunctive relief available. *Id.* at 87. Like Washington's anti-exculpatory CPA policy, California Civil Code § 3513 provides that "a law established for a public reason cannot be contravened by a private agreement." The *McGill* Court held that a waiver of the right to seek public injunctive relief under California's consumer protection statutes was therefore unconscionable and unenforceable. 393 P.3d at 93-94. The arbitration agreement in *McGill* first waived the plaintiff's right to seek public injunctive relief in arbitration and then requiring arbitration of all claims, thereby effectively waiving the plaintiff's right to seek a public injunction in litigation as well. *Id.* at 87-88. The waiver was unenforceable because it operated to prevent the plaintiff from seeking public injunctive relief in any forum. *Id.* at 94.

The Arbitration Clause here operates to preclude "private attorney general actions" seeking public injunctive relief under the CPA in the same way. First, the Arbitration Clause requires all "Claims" against Defendants to be arbitrated, including those "based on … consumer rights" and "statute." Dkt. 15-2 at p. 11 of 13.[7] Second, it provides that when a claim is arbitrated – as all claims against Defendants must be – the arbitrator "shall have no authority

---

[7] Plaintiff does not interpret the Arbitration Provision's prohibition on "private attorney general actions" to be a complete bar to all claims or relief under Washington's CPA. To the extent Defendants advance such an interpretation, a prohibition on all CPA claims and relief in either arbitration or litigation would plainly be substantively unconscionable under Washington law.

PLAINTIFF FANXIN ZENG'S OPPOSITION TO JOINT
MOTION TO COMPEL ARBITRATION - 18
CASE NO. 2:22-CV-00052-RAJ

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

to conduct any … private attorney general" proceeding, and the consumer "**WILL NOT HAVE THE RIGHT TO PARTICIPATE IN … A PRIVATE ATTORNEY GENERAL ACTION, OR OTHER REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION.**" *Id.* (emphasis in original).  The result is to deprive consumers of the ability to seek public injunctive relief under the CPA in any forum.

Washington's fundamental anti-exculpatory public policy under the CPA compels the same result as in *McGill*.  The Court should therefore find the Arbitration Clause's prohibition on "private attorney general" actions to be contrary to Washington public policy, substantively unconscionable, and unenforceable.

> **b.    The Arbitration Clause operates to exculpate Defendants from injunctive relief under the CPA.**

Defendants' own filings in this case demonstrate the exculpatory operation of the Arbitration Clause.  There is no dispute that Ms. Zeng seeks to enforce the CPA, including injunctive relief benefitting other Washington consumers, in her capacity as a "private attorney general." *See* Dkt. 1-2 at pp. 2-3, 31.  Defendants' Notice of Removal asserts that this Court has diversity jurisdiction over this case, Dkt. 1 at 3-6, and that the $75,000 minimum amount in controversy is met because Ms. Zeng's requested injunctive relief "relating to the entire portfolio of ISAs between Elevate and Washington residents." Dkt. 1 at ¶ 15.  The supporting declaration explains that "Plaintiff, allegedly 'in her capacity as a 'private attorney general,' seeks to invalidate ISAs between Elevate and other Washingtonians.'" Dkt. 2 at ¶ 7.

Defendants cannot first contend that this Court has jurisdiction over the case in part because Ms. Zeng seeks to enforce the CPA as a "private attorney general" and then ask the Court to compel her to arbitrate her claims before an arbitrator who "shall have no authority to conduct any class, private attorney general, or other representative proceeding." Dkt.  15-2 at

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

p. 11 of 13. Compelling Ms. Zeng to arbitrate before a tribunal with "no authority" to hear her "private attorney general" claims and depriving her of "**THE RIGHT TO PARTICIPATE IN ... A PRIVATE ATTORNEY GENERAL ACTION ... IN COURT OR IN ARBITRATION**," *id.* (emphasis in original), would eliminate her right to pursue injunctive relief as a "private attorney general" in *any* forum.[8] This would exculpate Defendants from responsibility under the CPA and allow them to continue to perpetrate unfair or deceptive practices on Washingtonians *even if the arbitrator found those practices to violate the CPA*. Indeed, because at least five other Washingtonians signed Elevate ISAs, Dkt. 2 at 2, Ms. Zeng's individual claim represents only a small fraction of the relief sought. Defendants' attempted exculpation from the CPA's broad relief is contrary to Washington's well-established public policy, and therefore unconscionable, void, and unenforceable.

> **c.  The unconscionable Class Action Waiver paragraph cannot be severed from the rest of the Arbitration Clause.**

The Arbitration Clause provides that if the class-action waiver paragraph is determined to be "invalid or unenforceable, only this sentence of this Arbitration Agreement will remain in force and the remainder of this Arbitration Agreement shall be null and void, provided, that the determination concerning the class action waiver shall be subject to appeal." Dkt. 15-2 at p. 11 of 13. The Court should therefore decline any request to sever the "private attorney general" aspects of Ms. Zeng's claims. Nor may Defendants evade the consequences of this unconscionable provision by waiving it. *Ohring v. Unisea, Inc.*, C21-359 TSZ, 2021 WL 2936641, at *9 (denying motion to compel arbitration where defendant sought to waive

---

[8] Defendants have not, to date, advanced any interpretation of the Arbitration Clause that would allow the arbitrator to issue broad, public injunctive relief. Any such interpretation would seem flatly inconsistent with the Arbitration Clause's prohibition on "private attorney general" actions. Dkt. 15-2 at p. 11 of 13.

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

unconscionable provisions because "courts generally interpret contracts as of the time of contracting, which makes any subsequent offer to waive unconscionable terms irrelevant").

**E.**     **The FAA Act Does Not Preempt Washington's Anti-Exculpatory Policy.**

Defendants contend that the "CLASS ACTION WAIVER" paragraph is enforceable because of the U.S. Supreme Court's holding in *Concepcion* that state laws prohibiting class-action waivers are preempted by the FAA. But *Concepcion* is inapposite because this is not a class action lawsuit. Moreover, the Ninth Circuit has repeatedly rejected arguments that *Concepcion* requires preemption of state laws, like *McGill* and Washington's anti-exculpatory policy, that prohibit waivers of public injunctive relief or "private attorney general" actions. *See, e.g.*, *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015) (state rule barring contractual waiver in any fora of representative claims under California's Private Attorneys General Act of 2004 was not preempted by FAA).

In *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 825 (9th Cir. 2019), the Ninth Circuit carefully addressed and rejected arguments that the *McGill* rule was preempted by the FAA in light of *Concepcion*. *Blair* controls the outcome of any preemption issues that Defendants may raise regarding Washington's anti-exculpatory CPA policy. A state-law rule is preempted if it is not a "generally applicable contract defense[]" and so does not fall within the saving clause as a "ground[] ... for the revocation of any contract." 9 U.S.C. § 2; *Concepcion*, 563 U.S. at 339. A rule is generally applicable if it "appl[ies] equally to arbitration and non-arbitration agreements." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015).

The *Blair* court held that the *McGill* rule is a generally applicable contract defense, noting that California prohibited waiver of public injunctive relief regardless of whether the contract included an arbitration provision. *Blair*, 928 F.3d at 827 (citing *McGill*, 393 P.3d at

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

94). Similarly, nothing in Washington's anti-exculpatory policy is limited to arbitration agreements – for example, it would also apply if the prohibition on "private attorney general" actions were in the ISA's "LIMITATION OF LIABILITY" section. *See* Dkt. 15-2 at p. 11 of 13.[9] Nothing in Washington's anti-exculpatory policy or the CPA prohibits the arbitration of "private attorney general" claims seeking injunctions that benefit other consumers, and it need not be read to show "hostility to" or "prohibit[] the arbitration of public injunctions." *Blair*, 928 F.3d at 827. Instead, like the *McGill* rule, it may be read to "merely prohibit[] the waiver of the right to pursue public injunctive relief in any forum." *Id.* Just like the *McGill* rule, Washington's anti-exculpatory policy "is a generally applicable contract defense derived from long-established [state] public policy. It is a 'ground[ ] ... for the revocation of any contract' and falls within the FAA's saving clause at the first step of the preemption analysis." *Id.* at 828 (quoting 9 U.S.C. § 2).

The *Blair* court also held that the *McGill* rule is not "an obstacle to the accomplishment of the FAA's objectives." 928 F.3d at 828 (quoting *Concepcion*, 563 U.S. at 341). It rejected the notion that *Concepcion* required "the enforcement of all waivers of representative claims in arbitration agreements." *Id.* (quoting *Sakkab*, 803 F.3d at 436). Instead, the Ninth Circuit has consistently held that "Congress plainly ... intend[ed] to preempt ... only those [state contract defenses] that 'interfere[] with arbitration.'" *Id.* (quoting *Sakkab*, 803 P.3d at 434 (quoting *Concepcion*, 563 U.S. at 346)). The *Blair* court therefore examined "whether refusing to enforce waivers" of a claim that is "technically denominated" as representative "will deprive parties of the benefits of arbitration." *Id.* (quoting at *Sakkab*, 803 P.3d 436). It does not.

---

[9] Indeed, to the extent that the "LIMITATION OF LIABILITY" section purports to exculpate Defendants from monetary liability under the CPA, *it* is unconscionable and unenforceable.

PLAINTIFF FANXIN ZENG'S OPPOSITION TO JOINT MOTION TO COMPEL ARBITRATION - 22
CASE NO. 2:22-CV-00052-RAJ

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

Concepcion's major concern "was that compelling classwide arbitration '*requires* procedural formality,' and, in so doing, 'makes the process slower, more costly, and more likely to generate procedural morass than final judgment.'" *Blair*, 928 F.3d at 828 (quoting *Concepcion*, 563 U.S. at 348–49) (emphasis in original). But claims for public injunctive relief do "not require formalities inconsistent with arbitration," and "arbitration of a public injunction does not interfere with the bilateral nature of a typical consumer arbitration." *Id.* at 828, 829. "A plaintiff requesting a public injunction files the lawsuit 'on his or her own behalf' and retains sole control over the suit." *Id.* (quoting *McGill*, 393 P.3d at 92).

The *Blair* court also rejected preemption arguments related to the potential substantive complexity of public injunctive relief (distinguishing the procedural complexity that animated *Concepcion*), the need for monitoring and the weighing of the public interest, the contention that public injunctive relief required more expansive discovery than routine single-plaintiff matters, and the potentially high stakes for the party facing the injunction. 928 F.3d at 829-931. Accordingly, the *McGill* rule is not preempted by the FAA. *Id.* at 830-31.

The Ninth Circuit's reasoning and holdings in *Sakkab* and *Blair* dictate the result in this case. Washington's anti-exculpatory CPA policy is a generally applicable contract defense that does not interfere with the FAA's objectives, deprive Defendants of the benefits of arbitration, change its essentially bilateral nature or introducing unmanageable procedural complexity. Washington's anti-exculpatory CPA policy is therefore not preempted by the FAA, and the Court should deny Defendants' motion to compel arbitration.

## V. CONCLUSION

The arbitration agreement in Ms. Zeng's ISA is both procedurally and substantively unconscionable, and Ms. Zeng therefore respectfully requests that the Court deny the

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

Defendants' motion to compel arbitration.

DATED: February 14, 2022.

JENSEN MORSE BAKER PLLC


By *s/ Benjamin J. Roesch*
    Benjamin J. Roesch, WSBA No. 39960
    benjamin.roesch@jmblawyers.com
    (206) 664-1835

    Attorneys for Plaintiff

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644

## CERTIFICATE OF SERVICE

Pursuant to RCW 9A.72.085, the undersigned certifies, under penalty of perjury under the laws of the United States of America and the State of Washington, that on the 14th day of February, 2022, the document attached hereto was delivered to the below counsel in the manner indicated:

*Counsel for Leif Technologies, Inc.*
Harold Malkin, WSBA No. 30986
Andrew DeCarlow, WSBA No. 54471
Per D. Jansen, WSBA No. 49966
Calfo Eakes LLP
1301 2nd Avenue; Suite 2800
Seattle, WA 98101
haroldm@calfoeakes.com
andrewd@calfoeakes.com
perj@calfoeakes.com

☒ Via CM/ECF
☐ Via electronic mail
☐ Via U.S. Mail, postage prepaid
☐ Via Facsimile
☐ Via Courier
☐ Via Overnight delivery

*Co-Counsel for Leif Technologies, Inc.*
Thomas F. Burke, PA Bar No. 320311
Ballard Spahr
1735 Market Street; 51st Floor
Philadelphia, PA 19103
BurkeT@ballardspahr.com

*Admitted Pro Hac Vice*

☒ Via CM/ECF
☐ Via electronic mail
☐ Via U.S. Mail, postage prepaid
☐ Via Facsimile
☐ Via Courier
☐ Via Overnight delivery

*Counsel for Top Applicant, Inc. d/b/a Elevate Hire; Elevate Hire, and Top Applicant:*
Steven Fogg, WSBA No. 23528
Todd Williams, WSBA No. 45032
Corr Cronin LLP
1001 Fourth Avenue; Suite 3900
Seattle, WA 98154
sfogg@corrcronin.com
twilliams@corrcronin.com

☒ Via CM/ECF
☐ Via electronic mail
☐ Via U.S. Mail, postage prepaid
☐ Via Facsimile
☐ Via Courier
☐ Via Overnight delivery

*Co-Counsel for Top Applicant, Inc. d/b/a Elevate Hire; Elevate Hire, and Top Applicant:*
Patrick Hammon
McManis Faulkner

☒ Via CM/ECF
☐ Via electronic mail
☐ Via U.S. Mail, postage prepaid
☐ Via Facsimile
☐ Via Courier

PLAINTIFF FANXIN ZENG'S OPPOSITION TO JOINT
MOTION TO COMPEL ARBITRATION - 25
CASE NO. 2:22-CV-00052-RAJ

50 West San Fernando Street; 10th Floor          ☐  Via Overnight delivery
San Jose, CA  95113
phammon@mcmanislaw.com

*Admitted Pro Hac Vice*


          Signed this 14th day of February, 2022, in Kansas City, MO.


                                        *s/Gwendolyn Wall*
                                        Gwendolyn Wall, paralegal

PLAINTIFF FANXIN ZENG'S OPPOSITION TO JOINT
MOTION TO COMPEL ARBITRATION - 26
CASE NO. 2:22-CV-00052-RAJ

**JENSEN MORSE BAKER PLLC**
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1644