HON. RICHARD A. JONES

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FANXIN ZENG,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>TOP APPLICANT, INC. d/b/a ELEVATE, ELEVATE HIRE, and TOP APPLICANT, a corporation, and LEIF TECHNOLOGIES, INC., a corporation,<br><br>　　　　　Defendants. | Case No. 2:22-cv-00052<br><br>**DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>NOTING DATE: FEBRUARY 25, 2022 |

## I. Introduction

Defendants Leif Technologies, Inc. ("Leif") and Top Applicant, Inc. d/b/a Elevate, Elevate Hire, and Top Applicant ("Elevate") (collectively "Defendants") moved to compel arbitration of the claims asserted by Plaintiff Fanxin Zeng on the basis of a signed, clear-cut arbitration agreement (the "Arbitration Agreement") contained in the income share agreement ("ISA") between Zeng and Elevate. Zeng now comes forward with no end of reasons as to why she should not be bound by her commitment, in the hope that something will stick. As set forth below, none do.

DEFENDANTS' REPLY ISO JOINT MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDING
(CASE NO. 2:22-cv-00052) - 1

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200　FAX, (206) 407-2278

*First*, Zeng's complaints of "procedural unconscionability" are empty protests designed to excuse her admitted failure to read the Arbitration Agreement before signing the contract. The Arbitration Agreement was conspicuously disclosed, and Zeng had the opportunity to review it—she simply decided not to do so. Nor did she exercise her right to opt out of the Arbitration Agreement, which alone is sufficient to defeat her claim of procedural unconscionability. Further, most of Zeng's claims of procedural unconscionability relate to her agreement to the contract *as a whole*—not to the Arbitration Agreement—and therefore are properly addressed by the Arbitrator, and not this Court.

*Second*, Zeng has not established substantive unconscionability. Even if Zeng had established that some portion of the Arbitration Agreement were substantively unconscionable, such issues could be easily cured through severance, which Zeng expressly agreed was proper per the plain language of the agreement she signed. To the extent there are concerns that the Arbitration Agreement is unilateral, that can be easily remedied through the severance of a handful of a few short clauses.

*Third*, Zeng has not established that the Arbitration Agreement is unenforceable as a matter of public policy. Nor could she, as Washington courts have never held that arbitration waivers of private attorney general claims are unenforceable. Indeed, holding that provision unenforceable on these facts would run afoul of the plain language of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), which requires private agreements to arbitrate to be enforced as written. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). In the alternative, the U.S. Supreme Court has granted *certiorari* on this precise question under California law, *see Viking River Cruises v. Moriana*, No. 20-1573 (cert. granted Dec. 15, 2021), and this Court should reserve decision or stay this action until the Supreme Court has ruled, rather than accept Zeng's invitation to create new law.

*Fourth*, earlier today, a federal court in California *granted* a motion to compel arbitration

DEFENDANTS' REPLY ISO JOINT MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDING
(CASE NO. 2:22-cv-00052) - 2

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2278

filed by Defendants in a similar action brought by a California obligor against the same Defendants under California law. Importantly, the ISAs signed by Ms. Zeng and by the obligor plaintiff in that matter contain the *same Arbitration Agreement*, with the *same opt-out language*, and were signed using the *same online process* on Leif's platform. This thorough and well-reasoned opinion provides persuasive authority that the Motion should be granted.

## II. Argument

**A. The Arbitration Agreement is not procedurally unconscionable.**

    **1. Because Zeng had an unexercised opt-out right, the ISA was not procedurally unconscionable.**

The undisputed elements of the record establish that no aspect of the Arbitration Agreement is procedurally unconscionable. Most pointedly, Zeng could have opted out of the Arbitration Agreement *with no penalty* at any time in the 30 days following her signature, but did not do so. Washington law, contrary to Zeng's suggestion, fully supports that conclusion. The authoritative Washington case on this topic—*Zuver v. Airtouch Communictions*, 153 Wn.2d 293, 103 P.3d 753 (2004)—provides that the dispositive inquiry for assessing procedural unconscionability is "whether [the signatory] lacked meaningful choice." *Id.* at 304.[1]

Unsurprisingly, then, where the signatory has the uncontroverted opportunity to opt out of the arbitration clause for a lengthy period after signing it, courts have held that no procedural unconscionability exists. In a recent opinion on similar facts, another Washington federal court ruled as follows:

> Here, while the circumstances regarding the creation of the credit agreement are disputed by the parties, there is no dispute that [the signatory] was given the chance to opt out of the arbitration provision within sixty days of receiving the [agreement]. . . . Therefore, [the signatory] did not "lack meaningful choice"; she had the ability for at least two months to opt out of the arbitration provision, and she had been informed that she had this right.

*Stone v. Mid. Am. Bank & Trust Co.*, No. 2:18-cv-87-RMP, 2018 U.S. Dist. LEXIS 220947, at

---

[1] Defendants cited Washington law at length in their initial motion, and agree that this Court should apply Washington law in resolving this motion. *See* Opp. at 5–7.

DEFENDANTS' REPLY ISO JOINT MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDING
(CASE NO. 2:22-cv-00052) - 3

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2278

*16–17 (E.D. Wash. Aug. 31, 2018). Nor was the opt-out provision "buried in fine print"—the Arbitration Agreement contained a standalone paragraph titled "**RIGHT TO REJECT**" explaining the opt-out opportunity. *See* Dkt. No. 15-2, Declaration of Romulo Manzano ("Manzano Decl."), Ex. B, at 10 (emphasis in original).

Zeng attempts to distract from this analysis by fixating on the question of whether the ISA is or is not a "loan," Opp. at 12–13, which is irrelevant for purposes of this motion. As described *infra*, the actual terms of the ISA—and most importantly, the fact that Zeng was undertaking a payment obligation in the event that she secured post-bootcamp employment—were conveyed to her on multiple occasions. As such, Zeng was aware that she had undertaken a financial obligation, and that she had agreed to arbitrate any disputes relating to that obligation—and she could have opted out of the latter agreement, but did not.[2]

**2. Zeng's claim that she was deceived before signing the ISA has no merit.**

At the outset, the facts and potential significance of Zeng's impression of the nature of the *overall contract*, including the services to be provided—as opposed to merely the content of the Arbitration Agreement—is a question for the arbitrator, not for this Court. *See Stone*, 2018 U.S. Dist. LEXIS 220947, at *9 ("Plaintiff's first two challenges, undue influence and procedural unconscionability, relate to the enforceability of the entire contract. The undue influence argument references Plaintiff's inability to review the terms of the agreement prior to signing . . . . This argument relates not to the arbitration provision specifically, but to the entire contract. Similarly, the procedural unconscionability argument refers to the contract's status as a contract of adhesion and Plaintiff's inability to negotiate the contract's terms. Both of these arguments go to the enforceability of the entire contract, and not specifically the arbitration clause within."). As a

---

[2] The reference to "student loan agreements" in a footnote in Defendants' motion papers, Opp. at 12–13 & n.6, was an isolated echo of language used repeatedly in the Complaint, e.g., ¶¶ 4.25, 4.53, 4.55, 5.27. By contrast, Defendants used the applicable term—income share agreement or ISA—45 times. Beyond that, whether an ISA constitutes a loan presents a question of law, not a question of fact, and as such cannot be the subject of a factual admission in a brief. *See, e.g.*, *Safeway Inc. v. Abbott Labs.*, 761 F. Supp. 2d 874, 891 (N.D. Cal. 2011).

DEFENDANTS' REPLY ISO JOINT MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDING
(CASE NO. 2:22-cv-00052) - 4

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2278

result, this Court should consider only facts relevant to whether Zeng had a meaningful choice with respect to the Arbitration Agreement—not as to the contract as a whole.

In any event, Zeng admits that she learned about Elevate's tech sales boot camp in spring 2021. (Dkt. No. 20, Declaration of Fanxin Zeng ("Zeng Decl."), ¶¶ 3.) Although Zeng states that she initially believed that Elevate was offering a job, not a job training bootcamp, she concedes that by April 2, 2021—*before* she signed the ISA—she had received correspondence from Elevate that unequivocally described the program more than once as a "bootcamp." Zeng Decl. ¶ 9. As a result, Zeng knew that she had signed up for an SDR *training* program, not a job. Further, the nature of Elevate's program was adequately and accurately conveyed to Zeng through videoconferences with Elevate before her enrollment. *See* Declaration of Norman Rodriguez ("Rodriguez Decl."), ¶ 3. As a result, she had ample opportunity to exercise a meaningful choice as to her enrollment. And factually, there is also no question that for weeks after enrollment, Zeng was pleased with the program's content to a much greater degree than she now admits. *See id.* at ¶¶ 4–6 & Exs. A–D. Although the Arbitration Agreement's enforceability does not depend on whether Zeng was satisfied with the program or not, her prior inconsistent statements wholly undermine the credibility of her more recent protestation that she lacked sufficient time to review or understand the Arbitration Agreement. Zeng Decl. ¶¶ 9–10 & Ex. C.

Relatedly, Zeng emphasizes yet another red herring in pointing to certain alleged regulatory violations—such as ostensibly not receiving a course catalog or curriculum until after enrollment—because, according to her, "[l]aws governing enrollment and student financing . . . provide relevant standards for procedural unconscionability." Opp. at 9–10. But that assertion is unsupported by any authority holding that the question of whether a technical regulatory violation occurred (which Defendants contest) informs the fact-specific *Zuver* standard of whether Zeng "lacked meaningful choice." Once again, Zeng is asking this Court to create new law that would upend the strong public policies favoring arbitration. And in any event, Elevate had made a

DEFENDANTS' REPLY ISO JOINT MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDING
(CASE NO. 2:22-cv-00052) - 5

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2278

program overview publicly available in advance of Ms. Zeng's enrollment that would have been available for her to review. Rodriguez Decl. ¶ 8 & Ex. F.

Zeng also makes much of the fact that an April 1, 2021 email from Elevate described the next step as an "application." Opp. at 8–9. That nomenclature, however, is industry-standard for contractual enrollment documents, and it is not deceptive for a student's application to also contain or encompass a contract to provide, on the one hand, and pay for, on the other, the services being applied for. *See* Rodriguez Decl. ¶ 7; *see also President & Bd. of Ohio Univ. v. Hawkins (In re Hawkins)*, 317 B.R. 104, 107 (B.A.P. 9th Cir. 2004) ("On or about July 30, 1986, Hawkins, a resident of California, submitted an application to the University College of Osteopathic Medicine. The application package included a 'Contract of Admission to the Ohio University College of Osteopathic Medicine' ('Contract')."). The ISA itself, too, was completely unambiguous about what Zeng was agreeing to. Zeng's suggestion that she thought she was merely submitting an application strains credulity in light of the fact that she concedes she entered her *bank account information* during the ISA enrollment process. *See* Zeng Decl. ¶ 12.

Last, although other portions of the ISA are not relevant to this analysis, Zeng nonetheless mischaracterizes those contents, including by suggesting that Elevate did not actually commit "to either admit Ms. Zeng or actually provide beneficial educational services." Opp. at 10–11. Zeng tries to create an ambiguity where none exists: Elevate's obligation to provide services is established in the second paragraph of the ISA, which states "YOU AGREE THAT **IN RETURN FOR RECEIVING THE PROGRAM OR TRAINING PROVIDED BY TOP APPLICANT, SDR BOOTCAMP,** YOU WILL PAY A PORTION OF YOUR EARNED INCOME TO COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITION OF THIS AGREEMENT." Manzano Decl., Ex. B, at 1. To the extent any ambiguity exists, Zeng's argument is also inaccurate as a matter of basic contract interpretation. Section 12 of the ISA, which addresses the topic of "breach and remedies," outlines instances in which the *obligor* may be in

DEFENDANTS' REPLY ISO JOINT MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDING
(CASE NO. 2:22-cv-00052) - 6

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2278

breach of the agreement, and outlines Elevate's potential remedies upon breach. The immediately following Section 13 operates as a proviso that clarifies Elevate's retained rights in the event of an *obligor* breach or related termination: "No breach or the termination of this Agreement will affect the validity of any of your accrued obligations owing to Company under this Agreement." Furthermore, even if some ambiguity existed, the presumption of consistent usage, too, counsels in favor of interpreting the word "breach" in light of its immediately preceding usage in Section 12 as referring only to a breach by the *obligor*. Consequently, although Zeng's contorted interpretation of Section 13 has no relevance, it is also simply incorrect as a matter of law and of fact.

### 3. Leif's web platform provided Zeng with ample opportunity to review—and insisted that she review—the Arbitration Agreement.

Zeng does not dispute that on April 2, 2021, she signed an ISA with Elevate on Leif's online platform. Zeng Decl. ¶¶ 12–16. The inexorable implication of Zeng's declaration, although not explicitly conceded, is that she simply chose not to read the contract before appending her signature to it. *Id.* at ¶ 15 (stating she "relied on Leif's web portal to highlight the [ISA]'s important terms and conditions"). Washington law offers no relief to individuals who choose not to read relevant legal documents before signing them. *See Sellman v. Boehringer Ingelheim Pharm. Inc.*, No. C21-1105-JCC, 2021 U.S. Dist. LEXIS 207648, at *6 (W.D. Wash. Oct. 27, 2021) (granting motion to compel arbitration despite plaintiffs' argument that they signed a contract without seeing the arbitration agreement) (citing *Nat'l Bank of Wash. v. Equity Inv'rs*, 81 Wn.2d 886, 506 P.2d 20 (1973) (holding that absent fraud, "a party to a contract which he has voluntarily signed will not be heard to declare that he did not read it, or . . . . to repudiate his own signature . . . . The whole panoply of contract law" rests on this principle)).

Beyond that, Zeng does not challenge the accuracy of the ISA application screenshots certified by Leif's Chief Technology Officer: she instead states that she "cannot confirm one way or the other" whether they are accurate. Zeng Decl., at ¶ 13. Zeng intimates that "it is unclear

DEFENDANTS' REPLY ISO JOINT MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDING
(CASE NO. 2:22-cv-00052) - 7

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2278

whether Leif's example reflects the ISA 'application' process for Elevate's prospective students," Opp. at 9 n.4, but in fact that point is not unclear: Leif's Chief Technology Officer attested that the process for individuals who signed up for an ISA through Leif's platform has not materially changed between January 2021 and the present, and he then described (and provided annotated visual excerpts of) that process. Manzano Decl. ¶¶ 7–13. This is exactly the process that Elevate obligors, including Zeng, utilized. The fact that the template ISA displayed in the screenshots refers to a different school and contains different language is of no moment, because Zeng's signed ISA is undisputed and available for review, and the declaration establishes that Zeng had the chance to review her "full ISA." *Id.* ¶ 11.

In terms of her affirmative recollection of the process, Zeng merely observes that she does not recall Leif's platform "highlighting or calling attention to any arbitration provision(s)." *Id.* at ¶ 15. The ISA that bears her signature, however, indisputably contains that provision, including an all-caps reference to arbitration at the top of the first page. Manzano Decl., Ex. B, at 10. Further, the snapshots of Leif's application workflow, combined with the accompanying narrative from Leif's Chief Technology Officer, demonstrate that the entire ISA is displayed to the viewer by means of a PDF viewer with a scroll bar, and even makes "the Contract" available for download as a PDF. *See* Manzano Decl. ¶ 11 & Ex. A, at 5–6. As part of an effort to minimize Leif's exemplary efforts to convey key financial provisions in the ISA through highlighting certain elements in the Agreement (while making the rest immediately and directly available in myriad formats), Zeng wrongly suggests that Leif somehow "downplayed" the Arbitration Agreement. But regardless, she cannot dispute that the text was prominently displayed in the contract, and that she made the personal choice not to read the contract's remaining provisions.

Zeng also argues that the purported novelty of the ISA as a financial instrument somehow justifies not reading it. Opp. at 11. Unsurprisingly, she provides no authority for that position, as none exists. If anything, the argument cuts the other way—to the extent Zeng was confused by the

DEFENDANTS' REPLY ISO JOINT MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDING
(CASE NO. 2:22-cv-00052) - 8

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2278

document, she should have given it more scrutiny, not less. The position is also irrelevant, because the *Arbitration Agreement* itself is not a novel construct. In any event, both the Arbitration Agreement and the payment structure of the ISA overall are explained in capital letters in the third and second paragraphs of the ISA, putting the content in plain language and plain view. Manzano Decl., Ex. B, at 1.[3]

Last, Zeng suggests that a comment from Elevate in a post-program email (stating that Zeng "probably [didn't] read" the ISA) reveals a uniform belief "that Elevate's students have not read the ISA." Opp. at 12. Far from an acknowledgment of any general or common practices by Elevate's "students" writ large, Elevate's comment reads more like a simple attempt at trying to understand why Zeng would inexplicably renege on the clear terms of the signed contract.

**B. The Arbitration Agreement is not substantively unconscionable.**

**1. The Arbitration Agreement is not invalid on the basis of non-mutuality.**

Zeng contends that the Arbitration Agreement is non-mutual, requiring arbitration of some claims by Zeng but not claims by Elevate. Opp. at 13–15. "'Shocking to the conscience,' 'monstrously harsh' and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." *Sweitzer v. JRK Residential Grp., Inc.*, No. 20-5849 RJB, 2020 U.S. Dist. LEXIS 194426, at *6-7 (W.D. Wash. Oct. 20, 2020) (internal quotation marks and citations omitted). While it is doubtful that the non-mutual nature of the Arbitration Agreement meets that demanding threshold, the challenged content can be severed. Contrary to Zeng's assertion, severance of precisely that nature is permitted by agreement of the parties. The ISA, after all, provides:

> **e. Severability.** Except as set forth in the in [sic] Section 20 (Arbitration of Claims Against Company), if one or more provisions of this Agreement are held to be unenforceable under applicable law or the application thereof to any Person or

---

[3] The fact that the ISA "process resulted in an ISA that mis-spelled Ms. Zeng's name", Opp. at 11, says more about Ms. Zeng than it does about Leif or Elevate. All of the obligor's information, including the obligor's name, is entered by the obligor. Manzano Decl. ¶ 9. Ms. Zeng's failure to type her name correctly or proofread her submission before confirming it is not Elevate or Leif's fault.

DEFENDANTS' REPLY ISO JOINT MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDING
(CASE NO. 2:22-cv-00052) - 9

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2278

circumstance shall be invalid or unenforceable to any extent, then (i) such provision shall be excluded from this Agreement to the minimum extent necessary so that this Agreement will otherwise remain in full force and effect and enforceable, (ii) the balance of this Agreement shall be interpreted as if such provision were so excluded and (iii) the remainder of this Agreement shall be enforceable in accordance with its terms.

Manzano Decl., Ex. B, at 11.[4]

Zeng contends that "the Court cannot sever any 'non-mutual' portions of the Arbitration Clause because the *entire* Arbitration Clause is non-mutual." Opp. at 14. But as demonstrated below, the Court could easily sever three small phrases (consisting of just eight words) to render the Arbitration Agreement bilateral:

> 20. ARBITRATION OF CLAIMS ~~AGAINST COMPANY~~. Except as expressly provided below, ~~Obligor agrees that~~ any Claim ~~against the Company~~ shall be submitted to and resolved by binding arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1 et seq., before the American Arbitration Association ("AAA") under its Consumer Arbitration Rules then in effect (the "AAA Rules", available online at www.adr.org).

The removal of these phrases would subject *both* parties to the arbitration obligation—which Zeng does not challenge in any other substantive respect, such as access to discovery, fee-shifting, or venue—while preserving all other rights and obligations. In sum, if this Court were to find that the unilateral nature of the Arbitration Agreement is substantively unconscionable, the Court should sever that language rather than deem the entire Arbitration Agreement unenforceable.

**2. The Arbitration Agreement is not invalid on the basis of public policy.**

Zeng next argues that that Arbitration Agreement is unenforceable because it waives her right to bring a private attorney general action ("PAGA claim") under RCW 19.86.090. Opp. at 15–23. Although Zeng portrays this conclusion as flowing naturally from Washington case law, it

---

[4] The ISA states that severance shall be available "[e]xcept *as set forth in*" the Arbitration Agreement (i.e., Section 20), not "[e]xcept as to" the Arbitration Agreement. The carve-out in the Arbitration Agreement ensures that if the Arbitration Agreement's *class-action waiver* is deemed unenforceable, it cannot be severed, to preclude a scenario in which Elevate is forced to arbitrate a complex class action or other representative action without recourse to appeal, which would otherwise be possible if a court could sever the class-action waiver. But the Arbitration Agreement does not otherwise prohibit a court from applying the parties' agreed-upon remedy of severance in the event of unenforceability.

DEFENDANTS' REPLY ISO JOINT MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDING
(CASE NO. 2:22-cv-00052) - 10

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2278

is actually novel and unprecedented: Zeng does not cite a single Washington state or federal court decision that has refused to enforce an arbitration agreement on the basis of a waiver of PAGA claims, and Defendants are aware of none.[5]

This is for good reason. The U.S. Supreme Court has twice recently held that when parties agree to resolve their disputes by *individualized* arbitration, those agreements are fully enforceable under the Federal Arbitration Act ("FAA"). *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), and *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018). In one of the few instances in which a court in a non-binding decision reached Zeng's preferred conclusion (i.e., that PAGA waivers are unenforceable as a matter of state public policy), that holding is now in serious question because the U.S. Supreme Court has granted *certiorari* on this precise question under California law. *See Viking River Cruises v. Moriana*, No. 20-1573 (cert. granted Dec. 15, 2021).

Zeng attempts to preserve her argument by suggesting that the Ninth Circuit's rulings in *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015) and *Blair v. Rent-A-Ctr., Inc.,* 928 F.3d 819, 825 (9th Cir. 2019)—both of which addressed only California law—"dictate the result in this case." Opp. at 23. What Zeng does not disclose, though, is that both of those decisions relied entirely on an underlying decision by the California Supreme Court in *Iskanian v. CLS Transp. L.A., LLC*, 327 P.3d 129, 151 (Cal. 2014), which *expressly* held that arbitration agreements could not waive PAGA claims under California law. Here, by contrast, no Washington court has reached that same conclusion, and Zeng offers no compelling reason why this Court should be the first. The Court should enforce the Arbitration Agreement as written. In the alternative, the Court should reserve decision or stay this action until the U.S. Supreme Court decides this issue (which would likely occur in or before June 2022, based on the Court's typical annual calendar).

---

[5] In *Scott v. Cingular Wireless*, 160 Wn.2d 843, 859, 161 P.3d 1000 (2007), which Zeng relies on heavily, the Washington Supreme Court found only class-action waivers—not PAGA waivers—unenforceable, and the Ninth Circuit later identified that rule as federally preempted by the FAA in *Coneff v. AT&T Corp.*, 673 F. 3d 1155, 1160 (9th Cir. 2012).

DEFENDANTS' REPLY ISO JOINT MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDING
(CASE NO. 2:22-cv-00052) - 11

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2278

**C. Another federal court, earlier today, compelled a plaintiff to arbitrate under the same Arbitration Agreement.**

In parallel to this action, Defendants were sued in federal district court in the Central District of California by a different obligor who pleaded similar claims to those advanced by Ms. Zeng, but arising under California and federal law. *See generally Justin Chi v. Top Applicant, Inc., d/b/a/ Elevate and Elevate Hire, et al.* (C.D. Cal., Case No. CV 21-9738 DSF (MARx)). As here, Defendants moved to compel arbitration on the basis of an arbitration agreement contained in the obligor's ISA. Today, the district court granted Defendants' motion to compel arbitration in a detailed and well-supported opinion (the "Chi Opinion"). *See* Declaration of Harold Malkin, ¶ 2 & Ex. A.

The Chi Opinion is particularly persuasive authority here for several reasons. First, although the Chi Opinion applies California law, the arbitration agreement at issue in that case is *word-for-word identical* to the Arbitration Agreement contained in the ISA signed by Zeng; the arbitration agreement contains the *same unexercised opt-out right*; and the online process the plaintiff used to sign the ISA in that case is *no different* from the process used by Zeng. In other words, the material facts are the same. Second, the arguments advanced by plaintiff in that case to avoid arbitration track closely to the arguments raised here by Zeng. And third, the opinion itself is well-reasoned and applies the same body of Ninth Circuit case law under the FAA. Defendants submit that the Chi Opinion provides clear and persuasive authority that the instant Motion, too, should be granted, and Zeng should be compelled to arbitrate her claims.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion and compel arbitration of Zeng's claims against Defendants in accordance with the express terms of the valid and enforceable Arbitration Agreement contained in the ISA. In that event, this Court should stay this action pending completion of arbitration proceedings.

DEFENDANTS' REPLY ISO JOINT MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDING
(CASE NO. 2:22-cv-00052) - 12

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2278

DATED this 25th day of February, 2022.

**CALFO EAKES LLP**

By: *s/ Harold Malkin*
Harold Malkin, WSBA #30986
Andrew DeCarlow, WSBA #54471
Per D. Jansen, WSBA #49966
1301 Second Avenue, Suite 2800
Seattle, WA 98101
(206) 407-2200 | Phone
Email:   haroldm@calfoeakes.com
Email:   andrewd@calfoeakes.com
Email:   perj@calfoeakes.com

**BALLARD SPAHR LLP**

By:  *s/ Thomas F. Burke*
Thomas F. Burke *(Pro Hac Vice)*
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.864.8463
Facsimile: 215.864.8999
Email:   BurkeT@ballardspahr.com

*Attorneys for Leif Technologies, Inc.*

**CORR CRONIN LLP**

By:   *s/ Steven W. Fogg*
Steven W. Fogg, WSBA No.23528
Todd T. Williams, WSBA No. 45032
1001 Fourth Avenue, Suite 3900
Seattle, WA 98154
(206) 625-8600 Phone
(206) 625-0900 Fax
sfogg@corrcronin.com
twilliams@corrcronin.com

**MCMANIS FAULKNER**

By:   *s/ Patrick Hammond*
Patrick Hammond *(Pro Hac Vice)*
50 West San Fernando Street, 10th Floor
San Jose, CA  95113
(408) 279-8700 Phone
phammon@mcmanislaw.com

*Attorneys for Top Applicant, Inc.*

DEFENDANTS' REPLY ISO JOINT MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDING
(CASE NO. 2:22-cv-00052) - 13

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2278